[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
DECISION
The plaintiff, PDN Corporation, owns six three-decker tenement houses in the Historic College Hill District in the City of Providence. It wants to demolish them. The defendant, the Zoning Board of Review of the City of Providence, said no. Hence, this lawsuit in which the plaintiff seeks judicial review of the defendant's decision under G.L. 1956 (Reenactment of 1988) §45-24.1-7.1, as amended and re-designated by P.L. 1989, ch. 408, § 3.[1]
Anyone who wants to demolish any structure in the Historic College Hill District, a historic district established by ordinance of the City of Providence, must submit an application and plans to the city's director of building inspection who is required to transmit the application and plans to the Historic District Commission for review. The commission may approve or disapprove the application, and is required to conduct its business at meetings open to the public at which any person, or his duly constituted representative, is entitled to appear and be heard on any matter before the commission before it reaches its decision.
The historic district was established and the commission created by ordinance of the City of Providence, adopted in 1960, pursuant to P.L. 1959, ch. 131, later codified as Chapter 24.1 of Title 45 of the General Laws. This enabling legislation permitted municipalities to "lay out and define districts which are deemed to be of historic or architectural value." Municipalities were empowered to create historic district commissions to which applications for demolition, among other activities, which affected the exterior appearance of any structure in the district had to be submitted for approval or disapproval. The decision of the commission was subject to appeal to the local zoning board of review and judicial review.
Of decisive importance in this case were the standards of review to be applied by the commissions as set forth in Section 4 of the enabling act, which were codified and re-enacted into §45-24.1-4, as it was in effect at the time the plaintiff submitted it application. First, the commissions were required to consider the following factors in their review of plans:
 "(a) the historic or architectural value and significance of the structure and its relationship to the historic value of the surrounding area; (b) the relationship of the exterior architectural features of such structure to the rest of the structure and to the surrounding area; (c) the general compatibility of exterior design, arrangement, texture, and materials proposed to be used; and (d) to any other factor, including aesthetic, which it deems to be pertinent."
Next, the Act set out some very specific legislative intentions to control the decisions of the commissions:
 "It is the intent of this act that the commission be strict in its judgment of plans for structures deemed to be valuable according to studies performed for districts of historic or architectural value. It is also the intent of this act that the commission shall be lenient in its judgment of plans for structures of little historic value or for plans for new construction except where such plans would seriously impair the historic or architectural value of surrounding structures or the surrounding area. It is not the intent of this act to limit new construction, alteration, or repairs to any one period of architectural style."
It seems to the Court that the General Assembly intended for structures in a historic district to be divided into two general classes. Structures deemed valuable according to studies were subjected to strict judgment by the commission. Structures of little historic value were subjected to lenient judgment by the commission except where the plans for those structures would seriously impair the historic or architectural value of surrounding structures or the surrounding area. The Act makes no reference to, nor does it prescribe any standards for a structure of no historic value, yet every exterior alteration of every structure in the district must be reviewed by the commission. The Act, also, does not put any content into the notions of "lenient" and "strict" as standards of judgment. Nevertheless, it is clear that the commission may disapprove plans even for the demolition of structures of little historic value and not deemed valuable according to the studies referred, provided it exercises "lenient" judgment.
It is a fair construction of the Act that every structure in a historic district potentially has some historic or architectural value, either because it was deemed so by an appropriate study or because a commission found it to have some historic value, either great or little.
In addition to the lenient/strict dichotomy of judgment, the Act mandated separate consideration of two classes of structures of different kinds of value:
 "In the case of an application for repair or alteration affecting the exterior appearance of a structure or for the moving or demolition of a structure which the commission deems so valuable to the city, town, state or nation that the loss thereof will be a great loss to the city, town, state or nation, the commission shall endeavor to work out with the owner an economically feasible plan for the preservation of such structure. Unless the commission is satisfied that the retention of such structure constitutes a hazard to public safety which hazard cannot be eliminated by economic means available to the owner or unless such proposed construction, alteration and repair will not in the opinion of the commission materially impair the historic value of said structure, the commission shall file with the inspector of buildings or duly delegated authority its rejection of such application. In the absence of a change in such structure arising from casualty, no new application for the same or similar work shall be filed within one year after such rejection.
 In the case of any structure deemed to be valuable for the period of architecture it represents and important to the neighborhood within which it exists, the commission may file with the inspector of buildings or other duly delegated authority its approval of such application if any of the circumstances under which approval might have been given under the preceding paragraph are in existence or if: (a) such structure is a deterrent to a major improvement program which will be of substantial benefit to the community; (b) retention of such structure would cause undue financial hardship to the owner; or (c) the retention of such structure would not be in the interest of the majority of the community."
The first paragraph clearly refers to structures at the very peak of preservation value. As to them the Act prescribes a powerful presumption favoring preservation and disfavoring any form of alteration. The second paragraph clearly refers to structures of lesser importance, which do not enjoy the same priority as those in the first paragraph and are subject to other public or private interests, such as benefit to the community or financial hardship to the owner. It is furthermore clear that it is the commission which is to do the deeming by which a structure falls into one or the other of the two classes specified in the act.
The original enabling act made no provision for preservation of structures not in a historic district. That lack was cured for the City of Providence by P.L. 1969, ch. 191, § 1, which authorized the city to establish a list of specified buildings or structures which were deemed to be of historic or architectural value. The need for such lists was eliminated in 1988, when P.L. 1988, ch. 373, § 1 amended the enabling act by defining a historic district as including one or more structures. It is quite apparent that the priority lists mentioned in the ordinance were not the kind of lists referred to in the 1969 Public Law. In the first place they were made up at the time the ordinance was adopted in 1960, nine years before the Law was passed. In the second place, the enabling legislation in 1969 made no reference to priorities or degrees or kinds of historic or architectural value in the lists. Finally, nothing in the 1969 Act indicated that it was intended to ratify lists already established. The Act was clearly prospective.
Except for references to the priority lists the ordinance generally tracks the enabling act. In this case, neither party challenges the validity of the priority lists for obvious reasons. The plaintiff attaches great importance to the fact that its property is not specified on the lists. The defendant accedes to the ordinance because it is a governmental agency of the City which adopted the lists. In any event, any question of the future validity of lists is moot by reason of the repeal of § 42-24.1-10 as it appeared before 1988, and the reenactment and revision of Chapter 24.1 of Title 42 in 1988 and thereafter without mention of priority lists.
I.
There are some preliminary points which must be disposed of before the Court considers the plaintiff's major arguments. First, the plaintiff contends that its substantial rights were prejudiced because the defendant's decision was somehow affected improperly because an attorney member of the commission appeared before the defendant, called, examined and cross-examined witnesses, presented exhibits and argued matters of law and fact to the defendant. The defendant responds that it was hearing the matter before it de novo under Hayes v. Smith, 92 R.I. 173
(1961), that, like the commission, any person or his duly constituted representative was entitled to be heard on any matter before it, § 45-24.1-4, that the matter was fraught with public interest, § 45-24.1-1, that the city solicitor was defendant's counsel, and that, like the commission, the defendant was empowered to call in experts to aid in its deliberations. This Court is satisfied that the plaintiff has utterly failed to demonstrate any prejudice to it from any activity of the attorney member of the commission. The Court further concludes that some representation and advocacy of the commission's position was necessary to protect the public interest, since the defendant is not a specialist in historic preservation, as is the commission.Cf. Renza v. Murray, 525 A.2d 53 (R.I. 1987). Accordingly, the defendant was entitled to hear from members of the commission and to have evidence presented to it by members of the commission. It was also not prejudicial error of law or procedure nor was it any conflict of interest for a lawyer member of the commission to appear and act in the public interest at the hearings.
II.
Next, the plaintiff urges that the individual members of the defendant board did not agree to the findings reported by the chair of the board in the board's decision. Despite the fact that this claim seriously impugns the integrity of the chair as the reporter of the board's findings and decisions, the plaintiff offers no evidence whatever in support of its claim. The members of the defendant board, assisted by its counsel, deliberated in open session on August 31, 1989. The motion to deny the plaintiff's application was made by Mr. Arthur Strother, seconded by Mr. Thomas Scorpio and passed unanimously. Although Mr. Strother's motion is not stated with all the elegance of a State document, it is nonetheless abundantly clear and unequivocal. On November 28, 1989 the chair promulgated Resolution No. 7074 of the defendant, containing six numbered findings of facts as having been adopted at the meeting of August 31, 1989. The Court has carefully compared the "summary" of the board's proceedings on August 31, 1989 with the resolution of November 28, 1989. The Court finds that each of the findings of fact specifically set forth in the resolution was, either explicitly or implicitly, discussed and accepted during the deliberations of August 31, 1989. There could well have been an abundance of non-verbal communication among the members of the board. The Court also notes that no member of the board has disclaimed agreement with the wording of the findings announced on November 28, 1989.
Since the decision of November 28, 1989 clearly enunciated the factual findings upon which the defendant based its decision, the plaintiff's citation of and reliance on Bellevue ShoppingCenter Associates v. Chase, 556 A.2d 45 (1989) is misplaced. In that case the reviewing Courts had before them only the uncrystallized deliberations of a zoning board of review. In this case the Court has the fully resolved product of the board's deliberation and decisional process. The plaintiff's contention is utterly without merit.
III.
The plaintiff contends that the defendant ignored standards and criteria mandated by the ordinance. It argues that, because its property does not appear on either priority list mentioned in the ordinance and because its property is generally condemned by the College Hill Study referred to in the ordinance, the defendant was prohibited by law from finding that the plaintiff's structures had any independent historic or architectural value or that, because of their own historic value, their demolition would seriously impair the historic or architectural value of surrounding structures or the surrounding area. The Court finds this argument arises from a confusion between the concepts of legal criteria and standards, on the one hand, and the probative weight of evidence to satisfy those criteria and standards, on the other hand. The legal criteria and standards which control the decisions of the defendant board are those spelled out in §45-24.1-4. Bellevue Shopping Center Association v. Chase,574 A.2d 760, 764-5 (R.I. 1990)
The City of Providence had no power to enlarge, diminish or otherwise modify those standards by ordinance, nor did it attempt to do so. See, State v. Krzak, 99 R.I. 156 [97 R.I. 156], 161 (1964). It is plain from the State law that any structure in a historicdistrict could have some historic or architectural value. The question of how much, if any, is to be decided by the commission, and the defendant by hearing de novo prior to 1988, based upon the substantial evidence before it. The only reference to studies regarding historic value in the enabling act occurs when the commission is required to be strict in its judgment of proposed plans for structures in the historic district. The Providence ordinance appropriately identifies the so-called College Hill Study of 1959 as such a study. The commission is fairly entitled to search that study to determine whether its judgment is to be "strict" or "lenient." Since the College Hill Study did not "deem" the structures in this case to be of historic or architectural value, the defendant correctly found in paragraph number 2 of its findings that it was required by law to be "lenient" in its judgment of the plaintiff's plan.
The defendant does not claim any authority to amend the ordinance nor does its decision have that effect, nor did it exercise any power validly denied to it by the local legislature. Accordingly, the plaintiff's citation of Colello v. Zoning Boardof Review of Cranston, 105 R.I. 195, 250 A.2d 520 (1969) is not appropriate. In that case the zoning board attempted to permit a use forbidden by the ordinance in a zoning district in the absence of any power to grant an exception. In this case the board was clearly granted the power by the ordinance to prohibit the demolition of any structure in a historic district of any historic or architectural worth, guided by the priority lists, but plainly not necessarily controlled by those lists. Section F, Article VI-A, Providence ZoningOrdinance.
The enabling authority by which a local legislature may permit zoning boards to grant special exceptions to general zoning regulations is contained in § 45-24-13. Under the enabling act local councils can limit the power of boards of review to grant exceptions. It is with reference to those limitations that the Court's holding in Thompson Methodist Church v. Zoning Boardof Review of Pawtucket, 99 R.I. 675, 679, 210 A.2d 138, 141 (1965), as quoted by the plaintiff, must be understood. No such local authority to limit historic district commissions appears anywhere in the enabling legislation.
The plaintiff's contention that, unless a structure appears on one or the other priority lists, or is deemed of historic or architectural value by the College Hill Study, the defendant is powerless to find it to be of some, even if little, historic value defies the plain language of both the enabling act and the ordinance. If the plaintiff was correct, notwithstanding the express provision of the ordinance, there would be no
structures in the historic district to which the leniency requirement applies. According to the plaintiff's position, the defendant would have only the two alternatives of (1) strict judgment or (2) powerlessness.
The plaintiff's contention that the College Hill Study constituted the sole and exclusive evidence of any historic or architectural value of any structure in the historic district is contrary to the enabling act and the ordinance. The study and the priority lists identify those structures to which the strict judgment requirement applies. The study and priority lists are substantial evidence of which structures are subject to the provisions of the fifth and sixth paragraphs of § 45-24.1-4, and no more. It is clear from the enabling act that it is the commission, not the local council, which is empowered to "deem" a structure "so valuable to the city, town, state or nation that the loss thereof will be a great loss to the city, town, state or nation . . ." (Emphasis supplied). It is also clear that it is the commission, not the local council, by whom a structure is "deemed to be valuable for the period of architecture it represents and important to the neighborhood within which it exists . . ." The enabling act does not empower any other agency of municipal government to do that deeming, nor did the City of Providence attempt to do so by ordinance. The priority lists were no more than authoritative and presumptive evidence, as guides,
of the respective values of properties within the historic district. The city council could not legislatively pre-empt a quasi-judicial power of the commission under the enabling act.
In any event, nowhere in the ordinance was the defendant limited to consideration of the College Hill Study in its determination of whether these structures had any historic or architectural value. In fact, the first paragraph of Section D(3) of Article VI-A of the Ordinance echoes the enabling act when it lists the factors to be considered by the commission, and the defendant de novo, in reviewing plans like the plaintiff's. The defendant is not limited by that paragraph to considering only whether a structure appears on a priority list. There is nothing in the ordinance which prohibits the defendant from finding that a structure, not on either priority list, has some historic or architectural value.
The defendant argues, as well, that only the criteria used in the College Hill Study to determine the historic or architectural value of a structure could be used by the defendant in its determinations. While there can be no doubt that the study constituted a valuable source of evidence by which historic value can be proved, it cannot be said that the enabling act or the ordinance makes it exclusive. Nothing in the ordinance expressly declares that only the measures of historic value used by the authors of the study could be used by the commission, and the defendant, to measure historic value, particularly in the exercise of lenient judgment of plans for structures of little historic or architectural value. The ordinance, itself, in Section F of Article VI-A with respect specifically to demolition, provides that the priority lists serve only as a guide. The priority lists, whatever their validity may be under the enabling act, are not intended by the ordinance to be the sole and exclusive source of evidentiary weight on the question of historic or architectural value. The defendant was not wrong in considering evidence of the historic or architectural value of the plaintiff's structures from sources other than the study or the priority lists. The Court, after a careful review of the study, agrees with the defendant's argument, that even though the study found the plaintiff's structures to be intrusions of no historic interest in the historic district, the criteria by which historic value was measured in the study are flexible enough to permit a change in valuation of the structures over time. The defendant's embodiment of that position as a finding of fact in its decision is fully supported by substantial evidence considering the record as a whole. There is also substantial evidence in the record from which the defendant could and did find that in fact it was applying criteria found in the College Hill Study to its consideration of these plans.
Finding number 3 in the defendant's decision would indicate that the defendant found as a matter of fact that these structures have sufficient historic value that their loss would seriously impair the historic or architectural value of the surrounding structures or area. It is not altogether clear from this finding that the defendant applied a strict standard or a lenient standard to its judgment. This Court is satisfied that based on the evidence before it the defendant was fully justified under either of these standards in denying the application before it.
IV.
The evidence presented to the defendant on the question of the historic or architectural value of the plaintiff's structures consisted of the testimony of experts whose qualifications were accepted by the defendant. Ms. Pauline Chase-Hamell testified that, if the standards she believed applied, were applied, the structures had no significant value and their demolition would not seriously impair the surrounding area. The witness assumed that the defendant could apply only the standards she believed were used by the authors of the College Hill Study. The defendant correctly rejected her opinion as not based on generally accepted standards relied on by experts in her field. The defendant also decided not to give her opinion of historic value dispositive weight in view of conflicting expert evidence. This Court is not permitted to second-guess the defendant on the credibility of witnesses and the weight to be accorded to their testimony in the event of a conflict. Mendonsa v. Corey, 495 A.2d 257, 263 (R.I. 1985). Ms. Chase-Hamell did acknowledge on cross-examination that the structures in issue did "reflect then a part of the history of this particular district, although that history may be early twentieth century history." (Trans. January 31, 1989, p. 66 11. 9-12). She was, however, of the opinion that such historic value was not the value which the ordinance intended to preserve, because they are not part of the "character" of the historic district. The defendant ultimately properly rejected her opinion in finding of fact numbered 4 in its decision.
Mr. Richard Chafee, a qualified expert in the field of the history of architecture, gave it as his expert opinion that the structures in question were "less deserving of being saved (than) almost any other of the approximately 1500 buildings on College Hill." (Trans. March 28, 1989, p. 27, 11. 15-18). He was of the opinion also that only the structures on the priority list were of sufficient historic value to be worth preserving in the district. It was his opinion that there are other three-decker tenement houses in other neighborhoods more worthy historically of preservation. In the face of conflicting expert evidence the defendant was justified in rejecting this witness' opinion.Mendonsa v. Corey, supra. The witness also conceded that his opinion was based on his interpretation of the ordinance, which is a legal matter for the defendant and the Courts to decide.
Ms. Antoinette Downing, whose expertise was recognized and acknowledged by everyone except the plaintiff, testified unequivocally that it was her opinion that the structures were significant to the history of the district. (Trans. March 28, 1989, p. 58, 11. 13-21). She clearly explained the basis of her opinion and asserted that professionally she found these structures to be "exciting." (Trans. March 28, 1989, pp. 61-63). She further testified that demolition of these structures would seriously impair the historic or architectural value of surrounding structures or the surrounding area. (Trans. May 3, 1989, pp. 4-5). The testimony of this witness, standing alone, even if it had not been supported by a veritable parade of expert witnesses in support of preservation of the structures, would suffice to sustain the defendant's decision. The testimony of Messrs. Arthur Krim, William Kite, William H. Jordy and Edward F. Sanderson, all pre-eminently qualified to testify as experts in their respective fields as to the historic or architectural value of these structures, fully supports the defendant's decision. The record, as a whole, provides an abundance of evidence to support the board's decision. The plaintiff seems to agree that the structures may have historic value measured by other standards than those which appear in the College Hill Study of 1959. It argues that such historic value, however great, cannot be the basis for any impairment of the value of the surrounding structures or area. This argument is simply another version of the plaintiff's "all-or-nothing-at-all" contention with regard to historic value. The defendant correctly rejected the plaintiff's argument as unsupported by any credible evidence in the record. This reviewing Court's conscience is at ease. Apostolou v.Genovesi, 120 R.I. 501, 509, 388 A.2d 821, 825.
The Court can easily understand that residents in the neighborhood, who have substantial investment in the renovation of historic structures or in the construction of new structures to conform to the historic appearance of the district, would desire to be relieved of the current unsightliness of the structures as the plaintiff has allowed them to become. The defendant quite properly disregarded the present unsightly and unrestored appearance of the exterior condition of these structures, just as it disregarded the plaintiff's plans for redevelopment with modern construction. The defendant correctly addressed the question of the historic or architectural value of these structures, as sited, in themselves, and as part of the district. It may well be that continued neglect may lead to such dilapidation of these structures that they may become irremediably disrepaired. That matter, although considered by the defendant, was not properly before it.
Since the defendant's decision was not beyond its jurisdiction, was not affected by any error of law or procedure, was not arbitrary or capricious and was based on substantial evidence considering the record as a whole, the plaintiff's appeal must be denied. Judgment will enter for the defendant. The defendant's decision is affirmed. The defendant will present a form of judgment for entry upon notice to the plaintiff.
[1] Although the plaintiff asserts that this Court's jurisdiction is derived from § 45-24-20, the Court finds its jurisdiction in § 45-24.1-7.1 and its predecessors. Nevertheless, § 45-24.1-7.1 prescribes that the manner of appeal shall be the same as provided in § 45-24-20. The parties have agreed that the substantive provisions of Chapter 24.1 of Title 45 of the General Laws of 1956, as reenacted in 1980, and as amended up to the date of the plaintiff's original application on March 17, 1988, shall apply to this appeal. The Court sees no reason to disagree.