DORMAN J. HAYES *et al. vs.* JOHN B. SMITH *et al.,*
AS MEMBERS OF THE ZONING BOARD OF REVIEW OF THE
TOWN OF SOUTH KINGSTOWN.

FEBRUARY 3, 1961.

PRESENT: Condon, C.J., Roberts, Paolino, Powers and Frost, JJ.

POWERS, J. This is a petition for certiorari brought to review a decision of the zoning board of review of the town of South Kingstown reversing a decision of the historic district commission of said town. We issued the writ, and in response to the mandate thereof the pertinent papers and records were certified to this court.

It appears therefrom that pursuant to the provisions of P. L. 1959, chap. 131, entitled, "An Act Providing for Historic Area Zoning," the town council of South Kingstown enacted an ordinance on December 14, 1959, establishing an historic district and an historic district commission of seven members, hereinafter called the commission.

The record further discloses that on April 15, 1960, the Kingston Congregational Church, hereinafter called the church, filed with the building inspector an architect's design of exterior construction for the building of an additional structure which would connect the existing church

with an existing parish house on premises located in an historic district. This filing was made pursuant to the provisions of section 4C of the ordinance. The pertinent provisions of this section are as follows:

"Powers and Procedures — Any person, individual firm or corporation propising [sic] to erect a structure or to alter, repair, move or demolish an existing structure, within a Historic District, in any manner affecting its exterior appearance or location shall file an application for same with the Building Inspector of the Town of South Kingstown who shall forward said application, together with all maps and pertinent data, to the Historic District Commission.

"In reviewing plans the commission shall give consideration to: (a) the historic or architectural value and significance of the structure and its relationship to the historic value of the surrounding area; (b) the relationship of the exterior architectural features of such structure to the rest of the structure and to the surrounding area; (c) the general compatibility of exterior design, arrangement, texture, and materials proposed to be used; and (d) to any other factor, including aesthetic, which it deems to be pertinent.

"The commission shall pass only on exterior features of a structure and shall not consider interior arrangements, nor shall it disapprove applications except in regard to these considerations.

"It is the intent of this ordinance that the commission be strict in its judgment of plans for structures deemed to be valuable according to studies performed for districts of historic or architectural value. It is also the intent of this ordinance that the commission shall be lenient in its judgment of plans for structures of little historic value or for plans for new construction except where such plans would seriously impair the historic or architectural value of surrounding structures or the surrounding area. It is not the intent of this ordinance to limit new construction, alteration, or repairs to any one period of architectural style."

It appears from the minutes of the commission that several conferences were held between the church and said

commission prior to the holding of a public hearing in the town hall on May 6, 1960. Some seventy persons including representatives of the church and interested residents were present.

The record before us does not disclose the identity of those who spoke in favor of or in opposition to the application of the church, but it does contain a brief summary thereof which was made by the secretary of the commission. It appears therefrom that opinions were divided as to the acceptability of the proposed architectural design, although the secretary's notes refer only to some who favored the design as submitted. In any event the minutes disclose that only six members of the commission were present at the meeting on May 6. When the vote was taken on the question of approval or rejection, the commission members were equally divided. It was then decided to meet again when all of the members could be present.

On May 26 the full commission did meet and by a vote of 4 to 3 rejected the proposed design. The record is silent as to the reasons for the rejection. Again, however, we are able to gather from the secretary's minutes that the majority objected to the fenestration and to the use of bricks in lieu of clapboards. It appears that the existing church and parish house, which would be connected by the proposed structure, have clapboard exteriors. Thereafter the duly authorized representatives of the church appealed from the decision to the zoning board of review, hereinafter called the board, in accordance with the provisions of section 7 of the ordinance which is substantially the same as that providing for appeal in P. L. 1959, chap. 131.

The board met on June 20, 1960, after giving due notice in accordance with law. The record of the hearing discloses that a substantial number of persons appeared and spoke in favor of or in opposition to the decision rendered by the commission. Several letters were received in evidence, in addition to the oral statements made by those in attend-

ance. These communications included letters from Reverend Arthur Wilson, Mr. and Mrs. Denison Greene, John Hutchins Cady and D. L. Masland, all of whom favored approval of the proposed design, contrary to the decision of the commission. The board took the matter under advisement and on June 27 all members concurred in the following decision:

"After careful consideration of the facts presented by minutes of the hearing by the Historic Zone Commission in the petition of the Kingston Congregational Church and those presented at the subsequent hearing before the South Kingstown Zoning Board of Review on appeal from the action by the Historic Zone Commission the undersigned members of the Board of Review present the following findings:

"We agree with the Commission that the new structure planned to connect the Church with the Church House is quite dissimilar in materials and design from the buildings that it will join. We believe that a more compatible architectural solution is desirable and possible. We note, however, that brick walls obviate a fire hazard to a degree. We observe, also, that the new structure will be set far back between the buildings that it adjoins and that it will be seen only from directly in front and from College Road at the north. It will not change the view east and west along Kingstown Road; the principal street of the village and the area of greatest historic importance. The new structure, although more elaborate than the adjacent buildings, is not of ultramodern design, but may be found in similar form in eighteenth century buildings in other locations of New England. We recognize the need for expansion of the Church School facilities.

"We cannot agree with those who consider that success of Historic Zoning rests only on strict, unbending interpretations of the ordinance. We believe that essential public support is gained by sufficient flexibility in detail to represent public interest without sacrifice of principal objectives.

"In the appeal before us, in view of the facts noted above, we are constrained to believe the Historic Zone

Commission took a view of the ordinance too restrictive to be in line with its intent or to be in the public interest. We grant the plea of the petitioners."

The petitioners contend that the board acted illegally, capriciously and arbitrarily, and that by the language employed in its decision it is obvious that there was an abuse of discretion in that the board applied a different standard than that set forth in the ordinance. This latter contention, they argue, is supported by the rule ofttimes enunciated in the decisions of this court; namely, that a zoning board of review cannot directly or by indirection amend the terms of the ordinance. They cite, inter alia, *Matteson* v. *Zoning Board of Review*, 79 R. I. 121, and *Heffernan* v. *Zoning Board of Review*, 50 R. I. 26.

We are of the opinion that petitioners have misconceived both the functions of the board in considering the appeal to it as authorized by the ordinance and the import of the decision rendered by the board in reversing the decision of the commission.

The instant cause is one of first impression in this jurisdiction and our research for decisions in other jurisdictions has not proved helpful. It seems desirable, therefore, to consider the purposes of historic zoning as expressed by the legislature in the enabling act and reasserted in the ordinance adopted by the town council of South Kingstown pursuant thereto. The language employed in the ordinance does not differ in any material particular from that employed by the general assembly as set forth in the first section of P. L. 1959, chap. 131. Paraphrasing the language of both the act and the ordinance we find the purposes to be: the safeguarding of the heritage of the town by preserving a district which reflects elements of its cultural, social, economic, political and architectural history; the stabilizing and improving of property values; the fostering of civic beauty; the strengthening of the local economy

and promoting the use of historic districts for the education, pleasure and welfare of the citizens of the town.

The yardstick to be used by the commission in achieving these objectives is set forth in section 4C of the ordinance. An analysis of that section leads us to the conclusion that the significant language thereof is contained within the second paragraph, namely, "(c) the general compatibility of exterior design, arrangement, texture, and materials proposed to be used * * *." Further, it is our opinion that the key words in section 4C (c) are "general compatibility." It seems to us that there is no requirement of rigid adherence in proposed construction or alterations to existing architectural style. It is enough if it can be said that the proposed plans are generally compatible with the architectural character of the district. It is not likely that the legislature intended to require such absolute duplication of existing style as to jeopardize the validity of historic zoning.

The petitioners vigorously contend, however, that the town council specifically provided, "It is the intent of this ordinance that the commission be strict in its judgment of plans for structures deemed to be valuable according to studies performed for districts of historic or architectural value." We are constrained to observe that there is nothing in the record before us to suggest a definitive status of the church structures as to historic or architectural value, nor is mention made of any actual studies performed in connection with the established district. Prescinding from such observations, however, we are of the opinion that the intendment of *strict* judgment relates to the issue of compatibility. It does not vest the commission in the first instance, or the board on appeal, with jurisdiction to substitute their conceptions of conforming architectural design for the plans submitted, if the latter are so compatible as to harmonize with the architectural influence of the surrounding areas.

180

The petitioners have directed our attention to certain language adopted by the board in its decision. They specifically refer to the following: "We agree with the Commission that the new structure planned to connect the Church with the Church House is quite dissimilar in materials and design from the buildings that it will join. We believe that a more compatible architectural solution is desirable and possible." The petitioners contend that by the use of the foregoing language the board conceded that the commission was justified in its decision, but that notwithstanding this concession, nevertheless proceeded to reverse it. The decision of the board, they argue, is therefore illegal, capricious and arbitrary.

We cannot agree with this contention. The language of the board relied on by petitioners inferentially acknowledges the general compatibility of the proposed design with the architecture of existing structures. The board, we think, was cognizant of its jurisdictional limitations and refrained from imposing its judgment or that of the commission in substitution for the plans submitted by the church in determining whether the plans met the test of compatibility. Compatibility, in the sense that it is used in the ordinance, in the last analysis necessarily involves a question of judgment and, subject only to review by this court, the judgment of the board on the issue of compatibility is final. The decision of the board in the instant cause, when read in its entirety, demonstrates that the board, while agreeing with the finding of the commission that the proposed plans lacked similarity, found nevertheless that they were compatible, even if not so compatible as the commission deemed advisable. From the evidence deduced at the hearing before it, we are of the oipnion that the board was justified in reaching the decision of which petitioners complain.

The ordinance provides in section 7 that appeals to the board shall follow the course prescribed for all other appeals on questions relating to zoning generally. General

laws 1956, §45-24-18, provides for hearings by boards of review, public notice of such hearings and the taking of testimony for the compilation of a record if offered. We are of the opinion that in appeals from decisions of historic zoning commissions, the board does not merely exercise appellate jurisdiction, limited as it were to a review of the record compiled at a hearing held by the commission. Rather it is authorized to consider the question de novo.

There is no provision either in the enabling act or the ordinance which directs the commission to hold a public hearing. There is a provision that all meetings of the commission shall be open to the public, but there is nothing to suggest that the taking of testimony by the commission at any such public meeting is a mandatory prerequisite to the exercise of its judgment.

In the case before us the board gave notice to all interested parties, gave public notice by publishing the same in a local newspaper and conducted a hearing as required by law. The record of that hearing discloses that a substantial number of persons gave oral testimony and several submitted their views in writing. Among the latter, introduced without objection, was a communication from John Hutchins Cady. Reputed by many to be the dean of Rhode Island architects, Mr. Cady in any event is acknowledged by authorities in the field to have vast experience in historical restoration work.

Although this communication to which the board presumably gave great weight was not included in the records certified to us, we have been made aware of its relevant contents by counsel for all parties. Mr. Cady stated, "that the new structure connecting the Church and the Parish House, although somewhat contemporary in fenestration, will be in harmony with the older buildings and will not detract from the colonial character of the Village street." If the board concluded from all of the evidence before it, and it apparently did, that the opinion expressed by Mr.

Cady fairly reflected the compatibility of the proposed design with the existing church structures and the architectural character of the historic district in which they were located, its decision was not erroneous.

The petition is denied and dismissed, the decision of the board is affirmed, the writ heretofore issued is quashed, and the records are ordered returned to the respondent board with our decision endorsed thereon.

*Albert E. Sarkisian, James A. McGuirk,* for petitioners.

*Robert B. Gates, William H. Leslie, Jr.,* for respondents.