**373 A.2d 496.**

E. GROSSMAN & SONS, INC. *vs.* ANTONE R. ROCHA *et al.*

MAY 19, 1977.

PRESENT: Bevilacqua, C.J., Paolino, Joslin, Kelleher and Doris, JJ.

KELLEHER, J. E. Grossman & Sons, Inc. is the owner of an undeveloped parcel of land which is located in the town of Portsmouth just west of Middle Road and north of Middle Lane. The defendant, Antone R. Rocha, was the chairman of the Town of Portsmouth's Planning Board of Review. During the past 10 years three different proposals regarding the subdivision of Grossman's parcel have been presented to the town's planning board. Antone R. Escobar and his wife Mary were the owners of a farm that abuts Grossman's property.[1] Each time Grossman's proposals were considered by the town's planning board the Escobars objected to them. The Escobars were successful in two of their three appearances before the planning board. The third proposal, which concerned a proposed plat called "Pondview Estates," was approved by

---

[1] Mr. Escobar died during the time this appeal has been pending before us.

the planning board in August of 1972. The Escobars, by invoking the provisions of G.L. 1956 (1970 Reenactment) §45-23-16, took an appeal to the planning board of review. The board of review by a 4 to 1 vote granted the Escobars' appeal, and Grossman in turn took an appeal to the Superior Court. The Escobars were permitted to intervene in the Superior Court appeal as party defendants. Subsequently, a justice of that court held a trial de novo and after reviewing the record made at the municipal level, hearing additional testimony, and taking a view, overturned the board of review's decision and reinstated the planning board's grant of Grossman's third application. In turn, the Escobars have prosecuted this appeal.

The board of review based its rejection of the proposed plat on its finding that Grossman's drainage system would not adequately protect the Escobars' property. The Pondview plat differed from the other two proposals submitted by Grossman in that it called for a subdivision of just a portion of the parcel with the remaining area to act as a buffer between the Pondview plat and the Escobars' property. One of the points of contention between the adjoining landowners was whether the so-called buffer strip would provide adequate drainage and afford protection to the Escobars from the effects of surface water runoffs. The planning board said yes, the board of review said no, and the Superior Court ruled that the Escobars had no standing to have their complaint heard by the board of review.

There are two dispositive issues in this appeal. They are (1) the Escobars' standing to appeal the planning board's decision; and (2) the scope of review available in the Superior Court. While both issues are somewhat interrelated because of the actions taken by the trial justice, we will first consider the question of standing and then discuss the various statutory provisions of ch. 23 of title

45 which pertain to planning boards, boards of review, and the appellate jurisdiction of the Superior Court.

The standing issue actually involves the Escobars' ability to obtain an administrative review of the action taken by the planning board. Earlier, in *Jeffrey* v. *Platting Bd. of Review*, 103 R.I. 578, 239 A.2d 731 (1968), and *Paterson* v. *Corcoran*, 100 R.I. 475, 217 A.2d 88 (1966), this court addressed itself to the criteria that would be used in measuring that degree of aggrievement which would enable a person to obtain the judicial review provided by §45-23-20. In its relevant part §45-23-20 states: "Any person owning land in such city or town located within one thousand ($1,000) feet of the subdivision involved shall have the status of an aggrieved person if the value or use of his land may be affected by the recording of such subdivision." In *Paterson* we said that an individual is aggrieved provided his property is within 1,000 feet of the proposed plat and he could establish that the filing of the plat might adversely affect the use or value of his property to a substantial degree. Later, in *Jeffrey,* we stressed that an individual was not required to prove that his property would in fact suffer the requisite degree of harm before he could seek judicial assistance.

In the *Paterson* case we noted that the planning board legislation as originally enacted afforded administrative review only to a developer whose plat was rejected by the planning board but that in 1965 the General Assembly amended §45-23-16 so that recourse to administrative review was broadened to include those who had appeared at the planning board hearing and lodged their objections to the proposals then under consideration. Section 45-23-16 makes it clear that those seeking administrative review must also satisfy the aggrievement standards of those who wish judicial review pursuant to §45-23-20. Thus, when we apply the criteria of §§45-23-16 and 45-

23-20 to the Escobars, we find that (1) objections were made on their behalf at the planning board hearing; (2) they reside within 1,000 feet of the proposed plat; and (3) it is quite apparent that Pondview might pose a substantial threat to the future use and value of the Escobars' farm. When we add all these elements together, it is obvious that the Escobars claim a specific and perceptible harm which distinguishes them from the rest of Portsmouth's citizenry. They, having satisfied the criteria delineated in §§45-23-16 and 45-23-20, are among those persons who are entitled to be heard at the administrative review afforded to the participating objectors.

As noted earlier, the Superior Court hearing was a full-blown trial where numerous witnesses appeared and testified. Rocha, the named defendant in this case, had dissented from the conclusion reached by the majority of the board of review. He told the trial justice of his disappointment with the position taken by his colleagues and reported that his disappointment had caused him to resign from the chairmanship. He also described the give and take that went on within the board as the members discussed the evidence that had been presented at the hearings. Another member of the board, who succeeded Rocha as chairman, testified and contradicted much of what the ex-chairman had reported. Other witnesses in the Superior Court were the engineer who had prepared all three of Grossman's proposed subdivisions and an engineer who appeared in behalf of the Escobars.

The trial justice in her rescript reported that she was impressed by the testimony given by Grossman's expert and found "* * * that it is more probative, credible and convincing than that of the Escobars' expert." The trial justice also disclosed that "[t]he Court finds as a fact, based upon the evidence which it finds to be most probative, credible and convincing, that the anticipated run-

off from the proposed subdivision will be adequately dissipated within this undeveloped strip and the impact, if any, on the Escobar land will not aggravate the existing condition to the extent that it may affect the value or use of their land." The trial justice concluded that the Escobars, having "* * * failed to produce probative, credible or convincing evidence that the value or use of their land may be affected by the recording of the proposed subdivision," had no standing to appeal to the board of review and no standing to contest the matter in the Superior Court, and as a result "* * * the Board of Review exceeded its authority and acted arbitrarily in sustaining the appeal of the Escobars and overruling the decision of the Planning Board."

In finding no aggrievement on the part of the Escobars, the trial justice relied on the in-court testimony of Grossman's engineer, who convinced her that his plans and specifications should have assuaged the Escobars' fears about the surface water flowing onto their property and eroding their soil and terrain. What the trial justice actually did in this case was to conduct a trial de novo wherein she rejected the testimony presented by the Escobars and accepted that offered by Grossman. Her ultimate finding that the Escobars are not aggrieved because they failed to prove that they may be harmed was in actuality a finding that Grossman's project posed no danger whatsoever to those whose property is located within 1,000 feet of Pondview. It is our belief that the trial justice's mistake as to the Escobars' lack of standing is the result of her having embarked upon a type of judicial review that was never authorized by the General Assembly.

### The Scope of Judicial Review

Before zeroing in on the scope of judicial review, we must first give a brief delineation of the administrative

processes set forth in ch. 23 of title 45. The General Assembly has authorized each city and town to establish a "planning agency," which in turn can promulgate rules and regulations that will control subdivision of land within the municipal boundaries.[2] Any local legislature, with the exception of West Greenwich's, that adopts subdivision ordinances and appoints a planning board must also establish a board of review.[3] The board of review is authorized to (1) hear and decide appeals taken from any order, requirement, or decision made by the planning board in the enforcement of the ordinance or its rules; (2) grant special exceptions to the planning board's rules; or (3) on an appeal, grant a variance to the application of the terms of the planning board's rules and regulations, and in the exercise of these powers the board of review can "* * * reverse or affirm wholly or partly or may modify the decision appealed from and make such order, requirement, decision or determination as ought to be made and *to that end shall have all the powers of the plan commission from whom the appeal was taken.*" (Emphasis added.) Section 45-23-18.

It is obvious from the description of the powers conferred upon the board of review that the Legislature has made the board of review, for all purposes but one, a "super" planning board.[4] In providing for an appeal by

---

[2]Section 45-23-2. Section 45-23-1 allows the planning agency to be designated as a "plan commission," a "planning commission," a "plan board," a "planning board," or some other suitable title.

[3]Section 45-23-14. This provision permits a municipality to designate its zoning board of review as the planning board of review. In Portsmouth the zoning board acts as the planning board of review.

[4]The one exception is in the rule-making area. Section 45-23-2 permits the municipal legislature to enact an ordinance which may confer upon the planning board broad rule-making power. Section 45-23-21 specifies that courts, in construing subdivision legislation and any ordinance enacted

any person aggrieved by the decision of the board of review or a decision of a plan commission from which no appeal lies to the board of review[5] or by the failure of the plan commission to take final action with respect to any plat within the required time, the Legislature has said that the Superior Court "* * * shall hear all pertinent evidence and determine the facts, and upon the facts so determined may affirm such decision, or may annul the same if found to exceed the authority of such plan commission or board of review, or may enter such other decree as justice and equity may require." Section 45-23-20.

In *Paterson* v. *Corcoran, supra* at 480, 217 A.2d at 91, we observed that the judicial review provided by ch. 23 of title 45 was to "* * * secure judicial protection against arbitrary action on the part of a plan commission or a board of review with respect to the approval of such plats." Again, in *Jeffrey* v. *Platting Bd. of Review, supra* at 586, 239 A.2d at 736, we noted that the "* * * principal intendment of the appeal section was to provide for judicial scrutiny of allegations that approval of a proposed plat had been given in violation of the state and/or municipal regulations."

The language of the judicial review section of the perti-

---

thereunder, should construe the statute or ordinance in a light most favorable to the planning board. In *Frank Ansuini, Inc.* v. *City of Cranston,* 107 R. I. 63, 264 A.2d 910 (1970), we pointed out that §45-23-21 refers to the planning board's rule-making power. Consequently, in the *Ansuini* case we ruled that a planning board's regulations for an involuntary donation of a portion of the proposed plat for public purposes would be proper if the amount of the dedication bears a reasonable relationship to the activity being generated by the developer. As a matter of fact, we invalidated the Cranston regulation because it called for a donation of a minimum percentage of the project area.

[5]Section 45-23-19 enables a municipal council to act as planning commission, and in such event there is no necessity for a board of review, and appeals from such decisions lie directly to the Superior Court. *See Veader* v. *City Council,* 106 R. I. 120, 256 A.2d 212 (1969).

nent legislation is somewhat imprecise. There is verbiage which in one part would seem to suggest that reversals shall be limited to instances where the agency, by acting in an arbitrary manner, has exceeded its jurisdiction, and at another point there is language which carries the implication that judicial review means a de novo hearing in the Superior Court. Adoption of the de novo view could lead us to a constitutional confrontation with the Legislature on the issue of whether the judicial branch of government may be required to implement legislative policy in a nonjudicial matter. The approval or disapproval of a subdivision plat is an administrative or ministreal act which effectuates legislative policy. *J. & M. Realty Co.* v. *City of Norwalk,* 156 Conn. 185, 239 A.2d 534 (1968); *Snyder* v. *Owensboro,* 528 S.W.2d 663 (Ky. 1975); *Boutet* v. *Planning Bd.,* 253 A.2d 53 (Me. 1969); *Levitt & Sons, Inc.* v. *Township of Freehold,* 120 N.J. Super. 595, 295 A. 2d 397 (1972); 8A McQuillin, *Municipal Corporations* §25.230 at 137 (3d rev. ed. 1976). The constitutionality of an assignment to the judiciary of such a function is highly questionable under the separation of powers doctrine. Consequently, the basic nature of this case militates against a de novo judicial review. *American Beauty Homes Corp.* v. *Louisville & Jefferson County Planning & Zoning Comm'n,* 379 S.W.2d 450 (Ky. 1964); 4 Davis, *Administrative Law* §29.11 at 188 (1958). *See also Green* v. *Wilmington Savs. Fund Soc'y,* 310 A.2d 638 (Del. 1973).⁶

We believe that the General Assembly appreciated this problem by using the language that it did. If it wished to give de novo appeal in the Superior Court, it certainly knew how to accomplish this goal. All we have to do is

---

⁶*Weeks* v. *Personnel Appeal Bd.,* No. 74-317-A (R. I., filed May 13, 1977), is distinguishable because there the disciplining of the police officer at the administrative level was a judicial or quasi-judicial action.

to look at G.L. 1956 (1970 Reenactment) §45-20-1.1, which permits a police officer who has been disciplined because of charges involving moral turpitude or violation of departmental regulations to take an appeal to the Superior Court, where he is entitled to "a trial *de novo* before a justice of the superior court without a jury." (Emphasis added.) If the General Assembly had intended that the Superior Court become a "super duper" planning board for all of the thirty-nine municipalities of this state, it could have said so in plain, simple, and direct English.

In the past we have examined statutes with language similar to §45-23-20 and interpreted them as providing de novo review. *See School Comm.* v. *State Bd. of Educ.*, 103 R.I. 359, 237 A.2d 713 (1968) [G.L. 1956 (1969 Reenactment) §16-39-2]; *Hayes* v. *Smith,* 92 R.I. 173, 167 A.2d 546 (1961) [G.L. 1956 (1970 Reenactment) §45-24-18]. However, the logic of those cases is unpersuasive because the review afforded therein was within the pertinent legislative or executive branch, and not the judicial. Consequently, a possible infringement of the separation of powers doctrine was not in issue.

Thus it is that this court, in its examination of the judicial review provisions of ch. 23 of title 45, believes that the General Assembly intended to provide for the traditional judicial review of an action taken by an administrative agency. The Superior Court will neither weigh the evidence nor pass upon the credibility of witnesses nor substitute its findings of fact for those made at the administrative level. Judicial review of an administrative decision is designed primarily to confine the agency's activities to the jurisdiction conferred upon it by the General Assembly. Thus, judicial scrutiny of an agency's factfinding, in the absence of a clear legislative directive to the contrary, is limited to a search of the record to determine if there is any competent evidence upon

which the agency's decision rests. If there is such evidence, the decision will stand. *Prete* v. *Parshley*, 99 R.I. 172, 176, 206 A.2d 521, 523 (1965). Here the trial justice's review should have been restricted to a search of the record made before the board of review, and the search should have been limited to the discovery of the necessary competent evidence.

In sustaining the Escobars' appeal, the majority of the board of review reported that it was taking such action "* * * because of lack of proper controls of the effluent water velocity and amount from the Pond View Estates on to the Escobar property." An examination of the record of the hearing conducted by the board of review discloses the following pertinent evidence.

The Middle Road-Middle Lane section of Portsmouth is immersed in surface water problems. Land abutting the easterly side of Middle Road has been developed into house lots. Surface water now pours down the development's roadways, across Middle Road, and into the Pondview plat area. The area slopes in a downward direction toward the Escobars' farm. One of the objectors, who resides on the westerly side of Middle Road and whose property will abut the Pondview development, described the amount of water that gathers at the stonewall that serves as a boundary between the undeveloped portion of Pondview and the Escobars' real estate.

The Escobars' son Louis told the review board that he had worked all his adult life on his parents' farm. He described how, because of a joint effort and expenditure of income by his parents and the federal government, a carefully engineered program of draining and ditching converted the farm's scrub land into good "grazing land" for the Escobars' cattle. The main drainage ditch, a half mile in length, is sodded and serves as a part of the pasture. Louis told the board that as many housing developments

replaced farmland and orchards, the adjoining land had lost its ability to hold water. This in turn, he said, increased the amount and the velocity of surface water flowing through the wall and into the drainage ditch. He expressed the belief that increased flow due to the development of Pondview would wash away the sods and "push it right down off the ocean, and make an awful mess."

The chairman of the planning board appeared before the review board and conceded that there had been some doubt as to the sufficiency of Grossman's proposal but that he and his colleagues felt that since the plans bore the seal of a duly licensed professional engineer, this symbol was an implicit guarantee that the engineer's computations were correct and based on a 25-year average rainfall. Later, when the engineer testified, he told the review board that his calculations were based on a 15-year rainfall. He did agree that his proposed drainage system might increase the quantity and velocity of the flow onto the adjacent land, and he also conceded that more water was going to wind up on the undeveloped portion of Grossman's parcel than previously had been the case.

The issue presented to the review board was one of pure credibility. If its members desired, they could have accepted the assurances of Grossman's representatives that the drainage system designed by the engineers was adequate. However, credibility is a matter to be determined at the administrative level. Having in mind the limited scope of judicial review, we merely would point to (1) the variance between the planning board's assumption that the engineer had based his calculations on a 25-year rainfall and the engineer's assertion that he had used a 15-year average, (2) Louis Escobar's testimony, and (3) the engineer's admission that more water was going to end up on the buffer strip. These factors provide an abundance of competent evidence to support the review

288

board's finding as to the lack of controls regulating the surface flowage from Grossman's land onto the farm. Our examination of the record discloses no justifiable basis whatsoever for disturbing the board of review's grant of the Escobars' appeal.

The defendants' appeal is sustained, the judgment appealed from is vacated, and the case is remitted to the Superior Court with direction to dismiss the plaintiff's appeal.

*Dolbashian, Chappell & Chace, Paul M. Chappell,* for plaintiffs.

*Joseph B. Going,* for Antone R. Escobar and Mary R. Escobar, defendants.