[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
DECISION
This is an appeal from a decision of the Zoning Board of Review of the Town of Cumberland denying the request of petitioner, W.J. Corp. for a subdivision of land. The Zoning Board was acting as the Town Platting Board of Review pursuant to G.L. 1956 (1991 Reenactment) § 45-23-14 and the subdivision regulations of the Town of Cumberland.
In May of 1987, W.J. Corp. (Plaintiff) filed an application with the Planning Board for construction of a subdivision located in the Town of Cumberland. The subject property is identified on Assessor's Plat 26 as Lots numbered 54 and 55. On July 11, 1988, after a hearing, the Planning Board denied the application filed by the plaintiff citing concerns over potential drainage and traffic safety issues as its reason for the decision. Pursuant to G.L. 1956 (1991 Reenactment) § 45-23-16, the plaintiff appealed the decision of the Planning Board to the Platting Board of Review (Board).
A series of scheduled hearings were held before the board. At these hearings, the board heard testimony from two expert witnesses presented by the plaintiff. The first witness, a soil scientist, testified regarding the plan of the plaintiff to provide proper drainage for the subdivision. A civil engineer was then called to further explain the drainage system and present calculations concerning post development runoff of water from the subdivision. Neighboring property owners (Objectors) to the subdivision then offered three expert witnesses to refute the testimony of the plaintiff's experts. The objectors' first expert, a civil engineer, testified to the adverse effects that the proposed development would have on drainage and erosion in the area. A traffic expert then testified to the impact that eight new housing units would have on the density of traffic in the area. Finally, the superintendent of the Pawtucket Water Supply Board testified to potential pollution problems which drainage from the subdivision might cause to the Abbott Run stream which leads into the Pawtucket Reservoir. The witnesses were questioned by counsel, the board, and citizens present at the meetings. In addition, several neighboring landowners spoke in opposition to the proposed subdivision.
After hearing these presentations, the board unanimously affirmed the decision of the Planning Board to deny plaintiff's application for approval of the subdivision. The board, reiterating the findings of the Planning Board, cited concerns over potential drainage and traffic safety issues as its main reasons for the decision. The plaintiff then filed a timely appeal to this court pursuant to G.L. 1956 (1991 Reenactment) §45-23-20. On November 30, 1989, a Superior Court justice granted a R.C.P. 24(b) motion to intervene in the present action by the objectors to the subdivision.
Section 45-23-20, which defines the scope of this court's review of decisions of platting boards of review, provides in pertinent part:
 The court shall hear all pertinent evidence and determine the facts, and upon the facts so determined may affirm the decision, or may annul the decision if found to exceed the authority of the plan commission or board of review, or may enter such other decree as justice and equity may require. The foregoing remedy shall be exclusive, but the parties shall have all rights of appeal and exception as in other equity cases.
The Supreme Court has interpreted chapter 23 of title 45 as limiting judicial scrutiny of an administrative agency's fact finding, to a search of the record for any competent evidence upon which the agency rests its decision. E. Grossman Sons,Inc. v. Rocha, 118 R.I. 276, 285-86, 373 A.2d 496, 501 (1977). If the record contains substantial evidence to indicate the platting board of review's decision comports with the requirements of chapter 23 of title 45, the decision will stand.Lett v. Caromile, 510 A.2d 958, 960 (R.I. 1986). Substantial evidence has been defined innumerable times as more than a scintilla but less than a preponderance. Apostolou v. Genovesi,120 R.I. 501, 388 A.2d 821 (1978).
At the hearing, plaintiff presented a soil scientist who gave testimony on the proposed drainage system for the subdivision. Plaintiff then called a civil engineer to further explain the drainage issue. Both gave testimony relating to the proposed drainage system with respect to how run off from the subdivision would be channeled away from the property. The experts also gave unrebutted testimony to the fact that the volume of drainage flowing off the site after development will be approximately ten percent less than the volume which currently occurs. However, on cross-examination, the witnesses admitted that there would be an increase in the volume of water through one of the points of discharge. The witness further stated that the volume of discharge now deposited over a 900 foot area will then be deposited in a seventy foot area after development is completed. Furthermore, in rebuttal, a civil engineer for the objectors, testified to the impact that the drainage system would have on the area. He established how the current proposal would aggravate an existing drainage problem in the area. The board had evidence before it that the increase in flow through the seventy foot area would also cause additional problems of icing of the roadway in the winter due to the increase in volume of water in the area.
The second issue before the board concerned the potential traffic hazards created by the proposed subdivision. The plaintiff presented letters from the State Department of Transportation approving the permit for a curb cut and from a Cumberland building official stating that the curb cut conformed to the regulations of the town. However, Mr. James Salem, a traffic expert, testified on behalf of the objectors that the proposed development would increase the amount of vehicle trips in the area by eighty trips per day. He further testified that the proposed entrance would create a hazardous traffic situation because the site distances to the south of the entrance for northbound traffic failed to meet minimum safety requirements. The board, in its decision, cited the testimony of Mr. Salem when its members stated their concern over potential traffic safety issues resulting from the proposed subdivision as one reason for its denial of the plaintiff's application. When a potential hazard at the location of a proposed use accompanies an increase in traffic at the site, it may properly be considered as a valid zoning criterion by the board while it is making its decision.Toohey v. Kilday, 415 A.2d 732, 737 (R.I. 1980). Therefore, the testimony of Mr. Salem was properly accepted and considered as a basis for the board's denial of the plaintiff's appeal.
Essentially, the board was confronted with evidence on both sides of the controversy in both the drainage and traffic safety issues. In Mendonsa v. Corey, 495 A.2d 257 (R.I. 1985), there was conflicting testimony before a zoning board from experts on both sides in regard to a proposed development being compatible with the surrounding land use. The Court held:
 In situations like the present case where there is conflicting testimony from equally qualified experts and substantial evidence exists on both sides of the controversy, we believe that the better rule is to limit the extent of judicial review. In such circumstances, we believe that the board who had before it the individual witnesses and had the opportunity to judge their credibility, was in a better position than the court to resolve the conflict. 495 A.2d at 263.
The Court has enunciated a similar standard of judicial review for the present action pursuant to § 45-23-20. The Superior Court will neither weigh the evidence nor pass upon the credibility of the witness nor substitute its findings of fact for those made at the administrative level. E. Grossman and Sons. Inc.,118 R.I. 276, 285-86, 373 A.2d 496, 501 (1977). The members of the board took great care and time to review and weigh the testimony of each of the opposing experts. Each member stated his reasons for denying the permit for the subdivision based upon evidence presented before them at the three hearings on the matter.
Additionally, members of the board also based their decision on personal knowledge of the poor drainage history and an inspection of the traffic conditions in the area. Information obtained in this manner certainly constitutes evidence upon which a finding may rest, but only if the record discloses the nature and character of the observations upon which the board acted.Perron v. Zoning Board of Review of Burrillville, 117 R.I. 571,369 A.2d 638 (1977), and cases cited therein. Members of the board who made personal observations of the area, did in fact disclose the nature of their observations when giving their decision. The disclosure of this information into the record allows board members to use this evidence as a partial basis for their decision. Id at 571, 369 A.2d at 642.
After a review of the entire record, this court finds that there is competent evidence upon which the board rested its decision and the decision must stand. Accordingly, the decision of the Zoning Board of Review of the City of Cumberland is affirmed.
Counsel shall submit the appropriate order for entry.