[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
DECISION
Before the Court is the Lincolns' appeal from a decision of the New Shoreham Zoning Board of Review, sitting as the Platting Board of Review. The plaintiffs seek reversal of the Platting Board's denial of an application for a minor subdivision.[1]
The proposed minor subdivision was rejected by the Platting Board by decision rendered at its October 24, 1988 public meeting. The matter is before this Court pursuant to G.L. 1956 (1988 Reenactment) § 45-23-20, and New Shoreham Revised Ordinances, Chapter 16, § 16-6.
The pertinent facts are as follows. The plaintiffs own a piece of property located in the Town of New Shoreham, Block Island. The land, designated as Plat 11, Lot 33, is within a zone designated as "Residence A." Lots platted in an RA zone subsequent to the enactment of the Town's Subdivision Regulations are, among other things, required to be at least 80,000 square feet in size.
Plaintiffs' predecessors in interest filed an application to subdivide the subject property into two, single family house lots. On March 21, 1988, after public hearings, the New Shoreham Planning Board voted to deny the subdivision application. Pursuant to Town ordinance and regulation, an appeal was filed with the Town's Zoning Board of Review, sitting as the Platting Board of Review. The appeal was considered by the Board de novo. While numerous hearings were held, the parties to this case place particular emphasis on the August 22, 1988 Platting Board of Review hearing.
At this hearing the plaintiffs claimed that the proposed lots conformed to subdivision requirements, and thus should be granted by right. Plaintiffs provided expert testimony as to several points. First, expert testimony was presented as to the size of the proposed lots (1.82 acres or 80,000 square feet and 2.53 acres or in excess of 80,000 square feet). Plaintiffs' expert, Raymond Cherenzia, alleged that the method employed to determine the size of each lot was the accepted method for computing land area. (Tr. 16). Next, expert testimony was given regarding the plaintiffs' proposal's compliance with various state regulatory authorities' requirements. These included the Coastal Resources Management Council's (CRMC) set-back requirement as well as the Department of Environmental Management's (DEM) septic system design criteria (Tr. 19-21).
After visiting the site, CRMC biologists and engineers recommended setbacks of 150 feet from the top of the bluff and 50 feet from the top of a gully situated in the area. Each lot satisfied or exceeded this stipulation as well as DEM's ISDS requirements. Further, expert testimony as to the property's ability to support the proposed subdivision, including erosion and ground water run off, was taken (Tr. 24, 39-43). Moreover, the plaintiffs presented expert testimony as to plans presented to the Planning Board for the reconstruction, presumably upon the subdivision's approval, of the road leading to the property. (Tr. 21-23).
Counsel for the Estate of Francis J. McCabe presented expert testimony in opposition to the plaintiffs' proposal. This expert, Philip Virgadamo, a registered professional engineer in the State of Rhode Island, testified as to the then current state of the aforementioned roadway. Mr. Virgadamo expanded on the roadway's grade, limited accessibility, and stability. (Tr. 61-63). Engineer Virgadamo provided further insight into the property's ability to accommodate the proposed subdivision. (Tr. 64-67). Additionally, Mr. Virgadamo gave testimony concerning the proposed subdivision's possible effect with regards to erosion already occurring in the area of lot 33. (Tr. 67-68). Contributing to this erosion was the soil strata's natural complexity.
On October 24, 1983 the Zoning Board, sitting as the Platting Board, rendered its decision. The Board voted to deny the subdivision application. In its decision, the Board rejected the plaintiffs' legal argument that land consisting of "bluff area,"[2] so called, is included in determining lot size. Citing the absence of the bluff area in figuring lot size, the Board held that the applicant had insufficient acreage to comply with the Town's then existing zoning regulations. The Board further held that the subdivision road as it then existed was not in conformance with Town subdivision regulations. The Board characterized the applicant's contingent reconstruction plans as "[insufficient] verbal representations." See Zoning BoardDecision, page 1.
A major portion of the Board's decision recited the testimony of the objectors' expert, Mr. Virgadamo. This recitation focused largely on the fact that if the proposal were approved, the margin for flexibility and deviation from the plans submitted was not great.
The Board, quoting Mr. Virgadamo, held, "a review of the plan indicates very little room for placement of houses, wells, and septic systems . . . when all required setbacks are observed."Decision, p. 2. The final segment of the Board's decision was a synopsis of the CRMC's "State of Rhode Island Coastal Management Program," specifically Section 2104 regarding exposed cliffs, bluffs, and banks. Finally, the Board's decision was amended to include the point that "bluff acreage" is tax assessed at a value greatly lower than "real real estate." Id. at 2.
After receipt of the Board's decision, the plaintiffs filed a timely appeal requesting this Court to reverse the Board's decision, and grant the request for a minor subdivision.
This Court's scope of review is controlled by G.L. 1956 (1988 Reenactment) § 45-23-20 which provides in part:
 § 45-23-20. Judicial Review. — Any person, whether or not previously a party to the proceedings, aggrieved by a decision of a board of review, or by a decision of a plan commission from which no appeal lies to a board of review, or by the failure of a plan commission to take final action with respect to any plat within the required time, may appeal to the superior court for the county in which the land is situated, by complaint filed within twenty (20). days after the decision is recorded or within twenty (20) days after the expiration of the required time as aforesaid. Any person owning land in the city or town located within one thousand feet (1,000') of the subdivision involved shall have the status of an aggrieved person if the value or use of his or her land may be affected by the recording of the subdivision. The court shall hear all pertinent evidence and determine the facts, and upon the facts so determined may affirm the decision, or may annul the decision if found to exceed the authority of the plan commission or board of review, or may enter such other decree as justice and equity may require. The foregoing remedy shall be exclusive, but the parties shall have all rights of appeal and exception as in other equity cases.
This Court's review of the Board's determinations pursuant to § 45-23-20 is not de novo. Kirby v. Planning Board of Reviewof the Town of Middletown v. Peckham Bros. Co., Inc., ___ A.2d ___ (R.I. 1993). In conducting its review of the Board's decision, the Court applies the "traditional judicial review" standard which is utilized in administrative agency actions.Id. quoting E. Grossman Sons. Inc. v. Rocha, 118 R.I. 276, 285, 373 A.2d 496, 501 (1977). Thus, the Court is not empowered to assess the credibility of witnesses, weigh evidence, or to make its own finding of fact. Lett v. Caromile, 510 A.2d 958, 960 (R.I. 1986). In essence, this Court's function is to search the record to ascertain whether "competent evidence" exists to support the Board's decision, or whether said decision is affected by an error of law. If such competent evidence exists, the Board's decision will stand. E. Grossman Sons, 373 A.2d at 501.
The plaintiffs contend that the Board's decision neither is founded upon the record, nor free from error of law.
Plaintiffs' first contend that in finding insufficient acreage, the Board both deviated from the record, and committed error of law. The testimony presented at the August 22, 1988 hearing unequivocally establishes that land area along shoreline slopes and bluffs is measured horizontally to the mean high water mark. (Tr. 15, 16). This testimony, provided by Raymond F. Cherenzia, a licensed land surveyor and professional engineer, was not disputed. In fact, the objectors' expert was never questioned as to whether an alternative method of land area determination exists. (Tr. 60-76). Finally, no then existing[3]
Town Ordinance was cited that would have prohibited inclusion of "bluff acreage" in satisfying other R.A. zone subdivision requirements. Likewise, this Court found no such ordinance or authority. In fact, the plain and ordinary language of the applicable ordinance as then existed evidences there was no then existing exclusionary clause as to bluff acreage. See Mullins v.Boardeleau, 517 A.2d 600 (R.I. 1986).
When ruling as to whether or not the minimum lot size requirements were satisfied, the Board was carrying-out an administrative/ministerial act. Grossman Son at 500. While conducting its administrative/ministerial business, the Board was to remain within the confines of the jurisdiction conferred upon it. Id. at 501. Sua Sponte altering the formula used in either surveying property or judging lot size, without a hearing, is not one of the powers granted to the Board. See Jeffrey v.Platting Board of Review, 103 R.I. 578, 239 A.2d 731 (1968) citing Yokley, Law of Subdivision, § 52, p. 112; G.L. § 45-23-1
et seq. When it excluded "bluff acreage" from area calculations, the Board ceased performing an administrative or ministerial function and consequently exceeded its statutory power. Discretion to do so does not lie with the Board. Jeffrey, 103 R.I. at 587.
Because neither competent evidence nor lawful ground existed in the record for the Board to rule that the plaintiffs failed to satisfy minimum lot size requirements, this Court rejects the Board's finding and holds that proposed lots 33A and 33B do meet the lot size requirement.
Plaintiffs next contend that the record fails to support the Board's finding that the roadway fails to meet subdivision requirements. After a review of the record, including Mr. Virgadamo's expert testimony, the Court concurs with the plaintiffs. Under cross examination the objectors' expert recognized that the developer had previously stipulated to bring the road into conformity with Town specifications. (Tr. 72). Moreover, he stated, "I'm certain the road could be brought into conformance with the Town's specifications . . . [a] road could be built that would satisfy the needs of this and the runoff problems. I'm confident of that." (Tr. 72). Coupled with plaintiffs' experts' testimony concerning the road, and objectors' expert's admission that his investigation regarded not what was proposed, but what existed at the time the developer's application was pending, it is clear to the Court that no competent evidence existed to support the Board's determination.
Plaintiffs next argue there is no evidentiary support for the Board's determination regarding erosion controls. The plaintiffs presented expert evidence that the proposed drainage plan would actually improve groundwater flow and perhaps improve the current bluff erosion. (Tr. 42). Plaintiffs' expert, Dr. Armand J. Silva, further stated that, considering the efforts being taken, and requirements incumbent with certain state regulatory authority approvals, he was of the opinion that "no unusual concern" existed as to the possibility of the subdivision exacerbating any pre-existing natural condition. (Tr. 43).
Engineer Virgadamo provided extensive testimony as to the feasibility of the proposed subdivision. Through his testimony a concern for tightness and a lack of flexibility in the proposal was revealed. (Tr. 65-67). Evidence of the unpredictability of change resulting from the proposed septic systems was also given (Tr. 68).
This Court will not pass upon witness credibility nor substitute its findings of fact for those made at the administrative level. E. Grossman Sons. Inc., 373 A.2d 496, 501. See also Mendonsa v. Corey, 495 A.2d 257 (R.I. 1985). However, the Board was not confronted by conflicting testimony. No evidence was given that inadequate erosion controls were being proposed. Rather, the testimony taken from each party's experts confirms that satisfactory measures were being taken to protect Block Island's fragile environment.
These measures include compliance with the CRMC's staff recommendations and the Town's land use ordinances. Despite this Court's great reluctance to reverse factual conclusions made at the administrative level, if the conclusions are "completely bereft of competent evidentiary support in the record," then they shall be reversed. Sartor v. Coastal Resources Mangt. Council,542 A.2d 1077, 1083 (R.I. 1988). After an exhaustive search of the record, this Court can find no competent evidence upon which this part of the Board's decision may rest.
Finally, the plaintiffs have asked this Court to review the Board's findings with regards to the proposed subdivision's impact upon the unique and beautiful Block Island scenic views. With regard to this, this Court takes notice of the importance of preserving the natural beauty of Block Island's unrivaled shoreline and unparalleled scenic vistas. While members of the Board are certainly permitted to base their decision on personal knowledge, in order to be considered competent evidence, the members must disclose the nature and character of their observations. Perron v. Zoning Board of Review ofBurrillville, 117 R.I. 571, 369 A.2d 638 (1977). Despite the acceptance of this type of evidence, the record remains barren of the evidence necessary to support the Board's denying the plaintiffs' application, in part or whole, on the basis of the development's scenic impact.
After a review of the entire record, this Court finds that the record is devoid of competent evidence to support the Board's decision. While the Court is mindful of the Town's arguments, the Court, as well as the Town is nonetheless bound by what our General Assembly has enacted and the case law that exists. Accordingly, the New Shoreham Platting Board's October 29, 1988 decision denying the subdivision application is hereby reversed.
Counsel shall forthwith prepare an appropriate order for entry.
[1] The New Shoreham Revised Ordinances, specifically Appendix A — Subdivision Regulations, Section 1, Article 8, et. seq. distinguishes subdivisions of land into three or fewer lots from larger subdivisions. Subdivisions resulting in three or fewer residential lots are referred to as "minor subdivisions." The plaintiffs proposed subdivision meets this criteria.
[2] The property in question is situated in the Mohegan Bluffs area of Block Island. "Bluff Area" is considered the land extending from beneath the top of the cliff (bluff) to the ocean's mean high water mark.
[3] Subsequent to the initiation of plaintiffs' application to subdivide their property, the Town of New Shoreham enacted an ordinance specifically excluding bluff acreage from minimum square footage requirements.