DECISION
Before this Court is an appeal from a decision of the Town of Scituate Zoning Board of Review ("Board"), granting a special use permit to Scituate Highlands ("appellees"). The Board granted the application of appellees for a special use permit to build an 18 hole golf course on the 237 acres of undeveloped land located on Nipmuc Road in Scituate. Summer Daze, LLC. ("appellant"), owners of lot 83 on Assessor's Plat 50 are abutters within 300 feet of the property at issue in this case. Appellant seeks reversal of the Board's decision of November 23, 1999 granting the special use permit for the construction of a golf course. This Court has jurisdiction pursuant to G.L. 1956 § 45-24-69.
 Facts and Travel
Appellees own lots 3, 4, 5, 8, 30, 32, and 12B on Assessor's Plat 50, ("property"). On or about April 1, 1999, appellees filed an application for a special use permit under the Town of Scituate's Zoning Ordinances ("ordinances"). Appellees sought to build an 18 hole, links-style golf course, a 3,500 square foot maintenance barn, and a 6,000 square foot clubhouse, which would house a restaurant and pub establishment on the property, zoned Rural Residential 120 ("RR-120"). A permit is required for this use in the RR-120 zone under Article II, § 3(3) of the ordinances, which allows golf course facilities to be constructed in the RR-120 zone with a special use permit. Appellees sought a clubhouse as an accessory use to the golf course.
Pursuant to Article I, § 6(C)(6), which gives the Board the authority to refer matters to the Plan Commission for "findings and recommendations," the Board requested that the Plan Commission review the application and plans and give an advisory opinion on the proposed project. In its April 21, 1999 letter to the Board, the Plan Commission recommended that the special use permit for a golf course be granted under certain parameters and on the condition that "no construction may commence without Plan Commission approval." (Provonsil letter at 3.)
Public hearings on the matter were held on April 27, 1999, May 25, 1999, October 12, 1999, and November 9, 1999. At these hearings, the Board heard testimony from representatives and experts from both sides. The appellees' presentation included testimony from Michael Weremay, a registered landscape architect, who discussed the layout of the proposed project; Scott Rabideau, a certified soil scientist, who discussed the environmental issues involved; and James Cronan, a registered professional engineer, who presented a traffic study. This expert testimony, along with the Plan
Commission's preliminary review and recommendation, supported appellees' application for a special use permit to construct a golf course and clubhouse on the property. Appellant, an abutter of the property, presented its real estate and traffic experts, James Sloan and Scott P. Moorehead, in rebuttal, and also submitted two opposition letters from the Scituate Conservation Commission and 65 such letters from concerned property owners from the Nipmuc Road area. The expert testimony and letters supported appellant's position that a golf course and club house in the proposed location would negatively affect the character of the neighborhood, cause a noise and traffic nuisance, pollution, and other environmental hazards.
After hearing the testimony, the Board voted unanimously to grant the special use permit allowing the golf course in the RR-120 zone and to deny the special use permit for the clubhouse, which would contain a restaurant and pub, because it could not be considered as an accessory use. The Board issued a written decision on January 25, 2000.
The appellant timely appealed the Board's decision on February 10, 2000. On appeal, appellant argues that in granting appellees a special use permit, the Board violated the statutory and ordinance provisions. Appellant asserts that because the Plan Commission did not conduct a full site plan review before it issued its advisory opinion to the Board, the Board lacked jurisdiction to grant the special use permit. Additionally, appellant asserts that the proposed golf course construction would cause traffic, such that the public convenience and welfare would be negatively affected and that the proposal was inconsistent with Scituate's Comprehensive Plan. Finally, appellant argues that the appellees did not establish through competent evidence that the golf course would be compatible with neighboring uses. Appellants have not presented to this Court any appellate arguments regarding the Board's denial of a special use permit for the clubhouse containing a restaurant and a pub as an accessory use. Accordingly, this Court will not consider same.
 Standard of Review
General Laws § 45-24-69(D), which directs this Court in its review of a decision of the Board on appeal, provides:
 "(D) The court shall not substitute its judgment for that of the zoning board of review as to the weight of the evidence on questions of fact. The court may affirm the decision of the zoning board of review or remand the case for further proceedings, or may reverse or modify the decision if substantial rights of the appellant have been prejudiced because of findings, inferences, conclusions or decisions which are:
 (1) In violation of constitutional, statutory or ordinance provisions;
 (2) In excess of the authority granted to the zoning board of review by statute or ordinance;
 (3) Made upon unlawful procedure;
 (4) Affected by other error of law;
 (5) Clearly erroneous in view of the reliable, probative, and substantial evidence of the whole record; or
 (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion."
This Superior Court reviews the decisions of a plan commission or board of review under the "traditional judicial review" standard applicable to administrative agency actions. E. Grossman Sons, Inc. v. Rocha,118 R.I. 276, 285, 373 A.2d 496, 501 (1977). This Court must determine, upon review of the record, that substantial evidence exists to support the Board's decision. Salve Regina College v. Zoning Bd. Of Review,594 A.2d 878, 880 (R.I. 1991). "Substantial evidence as used in this context means such relevant evidence that a reasonable mind might accept as adequate to support a conclusion and means an amount more than a scintilla, but less than a preponderance." Caswell v. George Sherman Sand and Gravel Co., Inc., 424 A.2d 646, 647 (R.I. 1981) (citing Apostolou v. Genovesi, 120 R.I. 501, 507, 388 A.2d 821, 824-5 (R.I. 1978)). Furthermore, this Court cannot substitute its judgment for that of the Board, but must uphold a decision supported by substantial evidence contained in the record. Mendonsa v. Corey, 495 A.2d 257 (R.I. 1985) (See also Lett v. Caromile, 510 A.2d 958, 960 (R.I. 1986) (Board's decision must be upheld if the record contains "any competent evidence," and the trial justice "lacks authority to weigh the evidence, to pass upon the credibility of witnesses, or to substitute his or her findings of fact for those made at the administrative level") (cited by Restivo v. Lynch,707 A.2d 663, 665-6 (1998)).
 Jurisdiction
As an initial matter, appellant argues that because the Board referred the application to the Plan Commission for advice and recommendation, a full site plan review is required by Article IV, § 13(B) upon its referral to the Plan Commission. Furthermore, because the Commission did not perform a full site plan review, appellant contends that the Board lacked jurisdiction to render a decision on appellees' special use permit application. Appellees counter that the Board's referral to the Plan Commission was for advisory purposes only, that the Board had the authority to proceed with its consideration of a special use permit without any opinion or review by the Plan Commission and finally, that the language in Article IV, § 13(B) indicates that the Plan Commission has discretion to make findings when reviewing a site plan "to the extent they are applicable to the information contained in the application for a special use permit."
Pursuant to G.L. 1956 § 45-24-1 et seq., zoning boards of review have a wide range of authority with regard to zoning matters. At the Town level, Article I, § 6(C)(10) of the Scituate ordinances gives the Board the power "[t]o hear and decide special use permits to the terms of this ordinance. . . ." The Scituate Board may, however, "refer matters to the planning . . . commission, . . . as the zoning board of review may deem appropriate, for findings and recommendations." Article I, § 6(C)(6). The power to review and grant special use permits is exclusive to the Board; while it may consult with the Plan Commission on the matter, the General Assembly did not legislate that the Board and Plan Commission share the responsibility of granting permits.
Specifically, appellant argues that the Board lacked jurisdiction to grant appellees' permit because the Plan Commission did not fully review the site plan. According to Article I, § 6(C)(6) of Scituate's ordinances, the Scituate Board may "refer matters to the planning . . . commission, . . . as the zoning board of review may deem appropriate, for findings and recommendations." Nothing in this ordinance requires that the zoning board share its permit decision making responsibility with the Plan Commission, or requires the Board to obtain the Plan Commission's approval to grant the permit. Accordingly, pursuant to the plain and clear language of the ordinance, the Board possesses complete authority to act alone on the permit application because nowhere in the ordinance does it say that the Plan Commission must approve the site plan before the Board makes its final decision. See Article IV, § 13(B). Thus, Plan Commission's full site plan review as dictated in the ordinance is mandatory only at the time the applicant applies for a building permit. See Article IV, § 13(A).
Furthermore, the Plan Commission did review the appellee's site plan and issued its advisory opinion in a letter to the Board. In that letter, David Provonsil, the Plan Commission Chairman, discusses many of the areas of concern appellant brought out at the hearings. On behalf of the Commission, he recommended five conditions be required before the Board approved the special use permit, including conditions on water quality, historic preservation, traffic design, and other environmental considerations in building a golf course. Provonsil further added that "[i]n the event that a Special Use Permit be granted, it should be noted that no construction may commence without Plan Commission approval as a Major Land Development project. . . ." (Provonsil letter at p. 3) (emphasis in original). In Chairman Provonsil's letter to the Board, all of the findings and determinations made upon the Commission's review of the site plan, to the extent they were applicable to the application for the special use permit, were included. See Article IV, § 13(B). It is evident from the language of this advisory letter that the Plan Commission was mindful of its later role of giving final approval of a project before the building inspector becomes involved in building permit consideration.
"It is the well-settled law in this state that a zoning board of review is presumed to have knowledge concerning those matters which are related to an effective administration of the zoning ordinance." Monforte v. Zoning Board of Review, 93 R.I. 447, 449, 176 A.2d 726, 728 (1962). In its decision, the Scituate Zoning Board acknowledged the participation of the Plan Commission in the process of awarding appellees a special use permit for the golf course. This Court presumes that the Board possesses practical knowledge of the manner in which its zoning ordinances are effectively administered. The Board acknowledged the confusion in the Town ordinances, but reasoned that the Plan Commission has the authority to make findings in reviewing a site plan "to the extent they are applicable to . . . the special use permit" and that the applicant should not have to endure the time and expense of two site reviews, one before a special use permit is considered and a second before a building permit is considered. Moreover, the Board noted if the Plan Commission was required to conduct a comprehensive site plan review before the special use permit is considered, and the Board denies the permit because it did not meet the standards, the extensive review would have been a fruitless waste of time for the Plan Commission and the applicant. Furthermore, despite an approval from the Plan Commission after a full site plan review, the Board could still deny the application for a special use permit because the Plan Commission's role at this stage of the proposal is still an advisory one. In the instant proceeding, the record clearly discloses that the Board reached its interpretation of the ordinance provisions regarding the Plan Commission's site plan review based on its knowledge "which will be presumed to be possessed by the board by reason of the character of their function." Noyes v. Zoning Board of Review of the City of Providence, 95 R.I. 201, 206, 186 A.2d 70, 73 (1962).
 SPECIAL USE PERMIT
Where a town zoning ordinance specifically provides for a use by special permit, the town has "implicitly demonstrat[ed] a legislative conclusion that the use (a) is harmonious with the other uses permitted in that district, and (b) is not to be excluded unless the standards for a special exception are not satisfied with respect to its establishment at a particular location or site." Perron v. Zoning Bd. of Review of the Town of Burrillville, 117 R.I. 571, 574, 369 A.2d 638, 640-641 (1977). Because a golf course is conditionally permitted by ordinance as a special use in Scituate, it is presumptively harmonious with other uses in the area of the property, and thus, the Board must award a permit as long as the use satisfies the standards as set out above in Art. I, § 6(C)(10) of the ordinances.
At the time of appellee's application, the property in question was classified as RR-120, which allowed construction of a golf course facility only by special use permit. The Town of Scituate Ordinances state that
 "a use designated as a special use in article II or elsewhere in this ordinance shall be permitted by the board following a public hearing if such use meets the following requirements;
 A. It will be compatible with the neighboring land uses.
 B. It will not create a nuisance in the neighborhood.
 C. It will not hinder the future development of the town.
 D. It will be in conformance with the purposes and intent of the comprehensive plan and the zoning ordinance. In granting a special use permit, the board may impose such additional safeguards and conditions on the proposed use as are deemed necessary in order to conform to these requirements." Scituate Zoning Ordinances, Art. I, § 6(C)(10).
Appellant argues that appellees' application and evidence presented before the Board was insufficient and failed to meet the four standards required for the grant of a special use permit in the ordinances. Appellant argues that the appellees' proposed golf course project is not compatible with neighboring land uses and that appellees' failure to present any expert testimony to prove compatibility deprives the Board of the authority to grant the special use permit. Appellant also argued that the traffic increase caused by the project would create a nuisance by negatively affecting the public convenience and welfare and that the proposal was inconsistent with the Town's comprehensive plan. Appellees respond that the Board properly applied the standards before unanimously voting to approve appellees' application for the special use permit.
The record reflects that the Board specifically and sufficiently addressed each element of the standard for approving a special use permit and addressed its concerns regarding the property involved in the proposed project. With regard to compatibility with the neighboring uses, the Board discussed its reliance on the Plan Commission's advisory opinion, which supported the project with a few conditions. In its decision, the Board stated that it knew the concerns of the neighborhood, from its review of letters from the objecting neighbors, the Providence Water Supply Board, and the Scituate Conservation Commission. (Board Decision at 15.) It took into account the proximity of the property to the Scituate Reservoir watershed and acknowledged the importance of protecting that valuable resource. Id. The Board found that "a links-style golf course, as explained in the testimony presented by applicant, would be compatible with neighboring land uses. . . ." Id. Appellant's argument that appellees did not present sufficient expert testimony on compatibility is not a valid concern for this Court in its review. However, this Court notes that at the hearings, the Board accepted the appellees' presentation of testimony and evidence that the project is compatible with the neighboring area. "[T]here is no talismanic significance to expert testimony. It may be accepted or rejected by the trier of fact. . . ." Restivo v. Lynch, 707 A.2d 663, 671 (R.I. 1998). This Court must not substitute its judgment for the Board on questions of fact.
Regarding standard B governing the creation of a nuisance, appellant argues that the Board erred in relying on the incomplete information provided by appellees' traffic expert in finding that "the potential traffic would be just barely less than a nuisance." (Decision at 17.) The zoning "board may take into consideration probative factors within their knowledge in denying relief sought and their decision will not be disturbed if disclosed therein are the conditions by which they were motivated." Goldstein v. Zoning Board of Review of City of Warwick,101 R.I. 728, 227 A.2d 195, 199 (1967). In a later decision, Toohey v. Kilday, 415 A.2d 732 (R.I. 1980), the Rhode Island Supreme Court overturned a denial of a special use permit because it found that the zoning board's generic and "conclusory" statements formed "an insufficient basis to deny a special use permit." Id. at 737. In the case at bar, the Board did state in its decision the factors within its knowledge and which it relied in concluding that the traffic increase would not constitute a nuisance. It measured the testimony of both traffic experts, the Chief of Police for the Town of Scituate and residents of the surrounding area, in reaching its conclusion. Because the Board specifically listed that the traffic "would be intermittent, seasonal and during daylight hours, it would be just less than a nuisance; that is, it would not affect the public convenience and welfare" (Decision at 16), this Court finds that the Board did have sufficient evidence before it to conclude that the traffic standard was met before it awarded the special use permit.
Appellant's final argument is that appellees' proposed use was inconsistent with the Town of Scituate's Comprehensive Plan because the appellees' did not revise the plan to include recommendations by the Providence Water Supply Board. On this issue, the Board specifically noted in its decision that it relied on the advisory opinion elicited from the Plan Commission which reviewed the site plan to the extent necessary, and concluded that "the proposal is in general consistency with the Town of Scituate's Comprehensive Plan." (Provonsil letter at 1.) The Plan Commission letter detailed considerations, such as water and soil quality, town resources and facilities, the rural nature of the Town, encouragement of job and tax-base enhancing activities, and conservation areas, relating to the Comprehensive Plan. Chairman Provonsil also attached to the letter maps and highlighted sections from the Comprehensive Plan showing that the proposed project was in general consistency with the Plan. The Board had sufficient evidence before it to make its determination that the project met the final special use permit standard.
This Court lacks authority to disturb a decision by the Board "as to the weight of the evidence on questions of fact." R.I.G.L. §45-24-69(D). If this Court finds that the Board's decision to award the permit to construct a golf course is supported by substantial evidence contained in the record, it must uphold the decision. Mendonsa,495 A.2d 257. This Court finds that there was sufficient, competent evidence in the record to support the Board's unanimous decision based on compatibility with the neighboring land uses, traffic issues not amounting to a nuisance, and the proposed plan's conformance with the comprehensive plan and zoning ordinances. The Board's knowledge on which its decision was based was clearly specified in its 26 page decision.
 Conclusion
After a review of the entire record, this Court finds that the Scituate Zoning Board's decision to grant a special use permit to appellees for the construction of a golf course was supported by substantial evidence in the record and was not arbitrary and capricious. The Board's decision was not in excess of its statutory powers or in violation of ordinance provisions. The Court further finds that substantial rights of the appellant have not been prejudiced.
Counsel for the prevailing party shall submit the appropriate order for entry.