211 A.2d 648.

The Industrial Development Foundation of Greater Woonsocket *vs.* Zoning Board of Review of the Town of North Smithfield *et al.*

JULY 2, 1965.

Present: Condon, C. J., Roberts, Paolino, Powers and Joslin, JJ.

POWERS, J. This is a petition for certiorari brought to review a decision of the North Smithfield board of review granting a special exception for the construction of a sand washing plant in an RA-40 district. We issued the writ and in compliance therewith the respondent board duly certified the pertinent records to this court for our examination.

It appears therefrom that respondent Holliston Sand Company, Inc., a Massachusetts corporation, hereafter called "Holliston," is the owner of an unimproved tract of land located in the town of North Smithfield. It contains some 53 acres consisting of four lots laid out and delineated as lots numbered 45, 79, 80 and 223 on tax assessor's plat No. 4. The property is situated on the southerly side of the Slatersville reservoir in a district zoned for single-family residences.

It further appears that Holliston acquired the property on February 1, 1963 from Theodore F. Bouchard and wife who, from 1957, had devoted it to a sand and gravel business. Zoning not having been adopted by North Smithfield

until September 27, 1960, the land was subject to this nonconforming use when acquired by Holliston.

The sand and gravel business conducted by Mr. Bouchard, however, appears to have been a one-man operation and did not involve the processing to which sand would be subject by Holliston; nor did it require the machinery necessary to the carrying on of Holliston's treatment of sand in preparing it for the industrial uses for which it is sold.

By the terms of art. IV, sec. 1F, of the ordinance it is provided that: "A pre-existing use may be enlarged only as a Special Exception under Article I, Section 5C."

Article I, sec. 5C, reads in part as follows:

"The Board shall have the powers set forth as follows: "* * *

"(2) To hear and decide *special exceptions* to the terms of this ordinance, according to the provisions set forth as follows:
"A use designated as a special exception use in Article II or elsewhere in this ordinance shall be permitted by the Board following a public hearing if such use meets the following requirements.
"A. It will be compatible with the neighboring land uses.
"B. It will not create a nuisance in the neighborhood.
"C. It will not hinder the future development of the Town.
"In granting a special exception, the Board may impose such additional safeguards and conditions on the proposed use as are deemed necessary in order to conform to these requirements. The disregarding of any such condition or safeguard shall be considered as a violation.
"Following its establishment, any use which is listed as a 'Special Exception' in the district in which it is located shall be considered as a permitted use."

On June 20, 1963 Holliston made application for a special exception pursuant to the provisions of the heretofore-

quoted sections of the ordinance. After a hearing thereon the board rendered a decision denying said application and Holliston appealed therefrom. In *Holliston Sand Co.* v. *Zoning Board of Review*, 98 R. I. 93, 200 A.2d 9, we quashed the board's decision and remanded the cause for a hearing de novo for the reason that the board had "failed to keep a proper record of all its proceedings, including a fair report or at least a reasonably accurate summary of the oral testimony or facts brought before it or otherwise known to it, upon which it based its decision."

Following our remand, the board again heard the application whereat testimony and documentary evidence were received from Holliston's witnesses and several remonstrants.

Frank Dorr, president and treasurer of Holliston, testified that the plant when completed would be worth close to $500,000 and employ thirty people. He stated that his company planned to develop the area as house lots after the hilly terrain had been leveled, and he stressed the company's intention to produce only industrial sand, disclaiming any intention of devoting the land to the removal of sand and gravel as that business is generally understood. He further testified that an access highway would be built over a right of way obtained from abutters and by these means avoid operating trucks on residential highways used by home owners in the neighborhood.

Holliston's superintendent, John Horan, testified in detail as to the nature of the company's operation, supplemented his testimony with maps, drawings and related documents, described specifically the proposed ingress and egress to which president Dorr referred, and related the various operational sites and access route to the maps received in evidence in connection with his testimony.

Superintendent Horan testified that during its processing the sand is washed and something like 2,000 gallons a minute would be used for the limited period of the operation;

that this would require the excavation of an overflow pond 200 feet in length, 60 feet in width, 10 feet in depth and at least 40 feet from the lower reservoir; and that most of the time there would not be more than two feet of water in the pond which he agreed could be fenced in for the protection of trespassing children. He further testified that the used water in working its way back to the reservoir would be filtered through the sand beds and return in a purer state than it was when taken. Describing the process, he stated flatly that there was no possibility of contaminating either the reservoir or a well constructed by petitioner. Its property lies south of Holliston's land and the two parcels are separated by a 150-foot strip of land, formerly a railroad right of way over which Holliston has a recorded easement from the holder of the title in fee. The latter is not a party to these proceedings.

Mr. Horan also testified that the various types of machinery and equipment to be used to achieve an efficient, modern operation could not be classified as a nuisance.

Robert Frey, a mechanical engineer, testified and minutely detailed the effectiveness of the dust-collecting equipment which his firm, Pulverizing Machinery Company, had been engaged to install so as to minimize dust resulting from Holliston's operation.

Anthony P. Zifcak, a real estate expert, testified that from his investigation it would appear that residential properties adjacent to sand and gravel operations did not diminish in value nor halt the construction of new residences. He described Holliston's land as rolling, sandy, hilly, and until leveled not adaptable to a residential use. He took pictures of the premises and they were received by the board in supplementation of the witness' testimony relative to terrain.

Edward M. Taggart, sand broker, testified that there was a great demand for industrial sand used in foundries and sand blasting. He stated that the common type of sand

and gravel removal for highway construction purposes would have an output in one day of as much as would be the case with Holliston in from three to four weeks. He recited factual data from which he concluded that Holliston's operation would tend to encourage industry in the area.

Other witnesses appeared for Holliston, but their testimony either corroborated that already related or has otherwise been paraphrased and need not be specified.

Several remonstrants, residents of Tifft and Black Plain roads, testified in opposition that they objected to the use of petitioner's trucks on those highways; that the special exception if granted would reduce their property values; that the proposed operation would constitute a nuisance; and that if Holliston were permitted to build, the future development of the town would be hindered.

The petitioner was created by an indenture of trust by a number of residents of the Woonsocket area for the purpose of developing new industrial sites and encouraging the growth of industry. To this end it acquired several large tracts of land which have been developed as Woonsocket Industrial Park, in which are already located five diversified industries employing approximately 500 people. These industries are partially supplied with pure water from a gravel-packed well, which together with pumping equipment was constructed on petitioner's property south of the southeast corner of Holliston's land. Although the precise distance cannot be determined from the record, it is apparent that the well is several hundred feet distant from Holliston's proposed overflow pond.

At the hearing on January 29, 1965, L. Philip Lemieux, petitioner's secretary appeared and stated that petitioner was not a remonstrant but that it was an interested party. No testimony was offered on its behalf, however, petitioner being content to rest with the introduction of a letter containing eight specific recommendations prepared by the

engineering firm of Charles A. Maguire & Associates, apparently at petitioner's request. Other than the acceptance by the board of this letter and Mr. Lemieux' statement, petitioner does not appear to have participated in the hearing.

The hearing was recessed to February 6 for a view and then recessed to February 9 for presentation by the parties of evidentiary summations. At the close thereof, the board retired for deliberation and, returning after an hour and twenty minutes, announced its decision granting the special exception sought. It found that the proposed exception would be compatible with the neighboring land uses, that it would not create a nuisance in the neighborhood, and that it would not hinder the future development of the town. The exception was granted, however, subject to the following conditions:

"1. The petitioners will not use Tifft Road nor Black Plain Road for ingress or egress to or from said lots with trucks

"2. Ingress and egress by trucks will be made from and to said lots by use of Forge Road southerly to Pound Hill Road, to State Highway for a period of one (1) year

"3. At conclusion of one year or prior to one year ingress and egress by trucks to and from said lots shall be made over old railroad right of way, so-called, over a trestle to be constructed by the petitioners to the land of the North Smithfield Development Corp., thence to State Highway #102

"4. An enclosure (6 ft. chain link fence) shall be erected from point 'A' which is the westerly bank of Trout Brook at site of old trestle and is the northerly side of old railroad right of way southerly to point 'B' as shown, on plan #2326 which point is the southerly line of railroad right of way, thence proceed westerly to a point which is the northwesterly corner of Lot #277 on North Smithfield Assessors Plat #4 and owned by the Industrial Development Foundation of Greater Woonsocket

"5. An enclosure (6 ft. chain link fence) shall be erected around overflow pond, so-called

"6. All used land shall be graded as level as possible

"7. Operations at plant shall be restricted to between 7 A.M. and 7 P.M.

"8. No trees be removed closer than 200 feet from reservoir edge

"9. All operations be deferred in the southeasterly corner of area which area will be used as a last resort."

From this decision petitioner duly appealed to this court. It prays alternatively that the board's decision be quashed or the cause remanded for consideration by the board of evidence which, it alleges, was not considered and goes to the board's jurisdiction to act. It makes five specific contentions in support of its position and we shall consider them in the order in which they were advanced.

The petitioner first contends that the board failed to make findings of fact which are a condition precedent to the exercise of its discretion. This argument is predicated on the proposition that it is not sufficient for a board of review merely to state its reasons in the language of the ordinance but must also set forth the findings on which such reasons are based. We have repeatedly stated that this is the procedure which a board should follow. *Robinson* v. *Town Council*, 60 R. I. 422; *Jacques* v. *Zoning Board of Review*, 64 R. I. 284; *Berg* v. *Zoning Board of Review*, 64 R. I. 290; *Buckminster* v. *Zoning Board of Review*, 68 R. I. 515.

However, in *Petrarca* v. *Zoning Board of Review*, 78 R. I. 130, referring to the cases cited we stated at page 133:

"* * * the undisputed facts of record hereinbefore summarized differentiate it from those cases where the facts are controverted or a change of use is involved, and are sufficient to justify us in overlooking the infirmity in the board's decision. It is well settled that this court will not set aside a decision of a zoning board

unless it is so arbitrary and unreasonable as to show a clear abuse of discretion by the board."
See also *Coffin* v. *Zoning Board of Review*, 81 R. I. 112.

We are persuaded that the record in the instant cause is so replete with probative evidence supporting the board's decision that it should not be disturbed for the reason that the stated grounds are not related to specific findings. The conditions precedent which the board was required to find before it could act favorably are set forth in art. I, sec. 5C (2), quoted *supra*. The board affirmatively found that the special exception sought would be conformable therewith and the record discloses that there was evidence on which such a determination could be made. The petitioner's Industrial Park in which five plants are presently operating is in the same zone as is Holliston's land and the latter's operation would clearly be compatible with petitioner's permitted use. Further, the evidence adduced readily supports inferences that the proposed operation would not constitute a nuisance nor hinder future development of the town.

The petitioner next contends that the board did not impose appropriate conditions and safeguards for the protection of its water supply and the interest of the community in general. This contention is predicated on the board's failure to include among those conditions which it did impose, the recommendations suggested by the engineering report which was prepared at petitioner's request. It would serve no good purpose to spell out those recommendations in this opinion since there was competent probative evidence that Holliston's proposed operation would not result in contaminating any water nor constitute a nuisance if the special exception sought were granted subject to the conditions actually imposed by the board.

The petitioner argues that in the exercise of the board's jurisdiction, the imposition of necessary conditions or safeguards is made mandatory by the provisions of G. L. 1956,

§45-24-13, which in pertinent part are as follows: "* * * said board of review may, in appropriate cases *and subject to appropriate conditions and safeguards,* make special exceptions to the terms of the ordinance * * *." (italics ours)

There is no question as to the correctness of this argument when in fact specific conditions and safeguards are found to be advisable for the protection of the public health, safety and morals. It does not follow, however, that conditions and safeguards proposed by a remonstrant must be imposed by the board unless competent probative evidence necessitates such imposition. The degree of precautions recommended by petitioner's engineers when contrasted with Holliston's evidence establishes a question of weight with which we are not ordinarily concerned. *Pascalides* v. *Zoning Board of Review,* 97 R. I. 364, 197 A.2d 747. The board accepted the evidence adduced by Holliston and we cannot say that its decision in this regard was capricious or arbitrary. That the board was cognizant of the recommendations urged by petitioner is readily apparent from the fact that one of the conditions it imposed was a restriction on Holliston's working the southeastern section of its land until the rest of its property will have been leveled. A glance at the map marked exhibit C discloses that it is the southeast corner of Holliston's land that is closest to petitioner's gravel-packed well.

We are not here confronted, contrary to petitioner's belief, with the situation that was present in *Fitzgerald* v. *Board of Review,* 99 R. I. 221, 206 A.2d 635. There, the board recognized the appropriateness of certain safeguards recommended by the city's director of sanitation as preventive measures against the overtaxing of neighboring sanitation and storm drainage systems, but granted the special exception sought without specifically including such recommendations in its decision. We remanded the cause to the board for the sole purpose of amending its decision by making explicit reference to the conditions and safe-

guards imposed. The circumstances in the two cases are not analogous.

The petitioner also contends that the board has failed to comply with the order in our remand for a hearing de novo, namely, that at such hearing a record be compiled in manner and form as laid down in *Robinson* v. *Town Council, supra.*

The thrust of petitioner's argument is that the transcript of the de novo hearing does not contain the recommendations made in petitioner's engineering report nor so much as a summary of what the board observed on taking a view. The short answer to the omission of the material contained in the engineers' report is that the copy thereof made available to the board by petitioner is included as part of the record. It was apparently inadvertently overlooked by the clerk of the board on making his return to the writ but was added to the record prior to consideration by us.

With regard to its argument that the decision should be quashed or remanded for the reason that the board failed to disclose what it observed on taking a view, petitioner relies on *Buckminster* v. *Zoning Board of Review,* 68 R. I. 515, *Heroux* v. *Zoning Board of Review,* 82 R. I. 237, and *Sundlun* v. *Zoning Board of Review,* 50 R. I. 108. These were cases in which the granting or denying of special exceptions was predicated on facts known to the board but not brought on the record, thus making it impossible for this court to determine whether the decision in each case constituted an exercise of sound discretion.

Here, however, the oral and documentary evidence adduced at the hearing disclosed the basis for the board's decision, support its conclusions and establish that the board's decision conforms to the requirements of the ordinance as well as the enabling act. In these circumstances a board of review does not abuse its power by failing to make known that which it observed on taking a view.

Nevertheless, petitioner also contends that the board lacked the power to grant the special exception after the hearing de novo for the reason that there was no showing of a change in the circumstances on which the board based its original decision denying Holliston's application. In support of this contention, petitioner relies on *Day* v. *Zoning Board of Review*, 92 R. I. 136, *Churchill* v. *Zoning Board of Review*, 98 R. I. 302, 201 A.2d 480, and *Marks* v. *Zoning Board of Review*, 98 R. I. 405, 203 A.2d 761. We held therein that a zoning board, on a subsequent application brought by the same applicant for substantially similar relief, is without power to reverse its prior decision absent a material change in circumstances intervening between the two decisions.

In those cases, however, the original decisions were neither reversed nor quashed and, as to the records on which they rested, were final adjudications. The so-called first or prior decision in the instant case, however, was quashed for the reason that there was no record. Thus, the decision presently being reviewed is the only decision and the cited cases are unavailing.

Lastly, petitioner contends that the board's decision is ambiguous, indefinite, vague and imprecise. Substantially, this argument resolves itself into repeated criticism of the board's failure to incorporate the Charles A. Maguire & Associates engineering recommendations as conditions to which the special exception would be subject. We have heretofore pointed out that since there was other competent evidence on which it can be supported, the decision of the board will not be disturbed for the reason that the recommendations contained in the engineering report were not given the weight to which petitioner believes they were entitled.

We hold, therefore, that at the hearing de novo held pursuant to our remand. the board compiled a comprehensive record from which it can be determined that the spe-

cial exception granted will be compatible with neighboring land uses, will not create a nuisance, and will not hinder the future development of the town. Consequently, the action of the board falls within the well-established rule that a board of review's decision will not be disturbed when found not to be an abuse of its power.

The petition for certiorari is denied and dismissed, the writ heretofore issued is quashed, and the records certified to this court are ordered returned to the respondent board with our decision endorsed thereon.

*Higgins & Silverstein, Sidney Silverstein, Bentley Tobin, Michael A. Silverstein,* for petitioner.

*Lewis Z. Lavine,* for respondent Holliston Sand Company, Inc.