[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
DECISION
This is an appeal from a decision of the Zoning Board of Review of South Kingstown (hereinafter "the Board"). The defendants Robert C. Pratt, Domenic R. DiLuglio, Richard N. Pratt and Neil Smith (hereinafter collectively "the applicants") applied to the Board for a special exception to allow them to locate a septic system within 150 feet of the line of mean high water of a tidal water body. The plaintiffs appeared at the hearing and objected to the granting of the special exception. The Board granted the application with conditions on August 2, 1989. This appeal was timely filed on August 23, 1989. The record was filed in this Court on January 5, 1990. Briefing was concluded on September 20, 1990. The case was assigned to this Justice for decision on December 2, 1992. This Court has jurisdiction under P.L. 1973, ch. 101, § 1, Para. 24. The standard of review is substantially the same as specified in G.L. 1956 (1988 Reenactment) § 42-35-15(g).
It is undisputed that the applicants are the owners and a prospective purchaser of a parcel of land in the Town of South Kingstown bordering on Seaweed Cove, which is an arm of Potter Pond, a tidal water body. The lot is roughly 50 by 150 feet. Section 308(B) of the Zoning Ordinance, as amended on January 11, 1988 reads as follows:
 "No disposal trench, disposal bed, cesspool, seepage pit or other facility designed to leach liquid wastes into the soil shall be located within 150 feet of an intertidal salt marsh or within 150 feet of the line of mean high water of any tidal water body as defined in regulations adopted by the Coastal Resources Management Council of the State of Rhode Island and subsequent amendments thereto, except by the granting of a special exception by the Zoning Board of Review."
It is impossible to locate any kind of independent sewage disposal system (ISDS) more than 150 feet from the mean high water of Seaweed Cove because of the dimensions of the lot. The lot is zoned R-20 in which single family residential use is permitted. The applicants propose to use the lot for a single family residence.
It is noteworthy that § 308(B) has been amended since it, and Potter Pond, were considered by our Supreme Court in Gara Realtyv. Zoning Board of Review, 523 A.2d 855 (R.I. 1987). At the time of that opinion the limitations in § 308(B) were inflexible. An applicant was held by that opinion to need to show only an adverse impact from the limitation amounting to more than a mere inconvenience in order to be entitled to relief in the form of a deviation. By providing for a special exception the amended provision now permits relaxation of the limitation, but only if an applicant can show that the location he or she proposes for the ISDS will have no detrimental effect upon public health, safety, welfare and morals. Id., at 858.
The special act authorizing the Town of South Kingstown to adopt a zoning ordinance was amended by P.L. 1976, ch. 11, § 1 to provide in part of Paragraph 18:
 "The ordinance, regulations, and restrictions adopted pursuant to the authority of this chapter shall provide that said board of review may, in appropriate cases and subject to appropriate conditions and safeguards, make special exceptions to the terms of the ordinance in harmony with its general purpose and intent and in accordance with general or specific rules therein contained or where such exception is reasonably necessary for the convenience or welfare of the public." (Emphasis supplied).
Pursuant to that authority § 510 of the zoning ordinance provides as follows:
 "Before any special exception shall be granted, the applicant shall show to the satisfaction of the Board:
 A. That the granting of the special exception will not result in conditions inimical to the public health, safety, morals and welfare, and
 B. That the granting of such special exception will not substantially or permanently injure the appropriate use of property in the surrounding area or district.
 In granting a special exception the Board may impose such special conditions as are deemed necessary to maintain harmony with other lots in the same or abutting zoning districts and to promote the objectives of this Ordinance. Approval of an application for a special exception shall expire one (1) year from the date of granting by the Board unless the applicant exercises the permission granted or receives a building permit to do so and begins the construction and diligently pursues it until completed." (Emphasis supplied).
The Board granted the application subject to several conditions, only two of which are material to the issues raised in this appeal. They are:
 "2. The system proposed is conditionally approved for a period of two (2) years commencing on the date on which a certificate of occupancy is issued for the use of the dwelling. During that time, the South Kingstown Conservation Commission shall conduct monthly inspections of the system, during months the house is occupied, at a date and time mutually agreed upon. The Conservation Commission shall make written reports to the Building Inspector of each inspection.
 3. At the end of the two-year period, the applicant shall be required to appear before the Zoning Board of Review in order for the Board to review the operation of the system. If the Board finds that the system is operating satisfactorily, one annual inspection by the Conservation Commission shall be required as long as the system is in operation. If the Board finds that the system is operating in such a way that the conditions imposed by Section 308 of the Zoning Ordinance, are not satisfied, the Board shall take whatever action is supported by the evidence."
The system referred to in the application was found by the Board to consist of a standard ISDS, to which is added a recirculation tank, a sand filter and a methanol denitrification chamber. The Board also found that the additional features are experimental and will require intensive maintenance. The conditions regarding inspections, reports and subsequent review of the operation of the system are clearly designed to deal with the unique situation presented by the innovative features of this experimental system.
I.
The plaintiffs argue that the board exceeded its authority under the statute and ordinance by imposing these conditions. They contend that the Board had no authority to approve an ISDS conditionally or to give any orders to the Conservation Commission. The imposing of special conditions on the grant of a special exception is specifically authorized by the Ordinance and the enabling Act, and has been approved by the Supreme Court.Industrial Development Foundation of Greater Woonsocket v.Zoning Board of Review of the Town of North Smithfield,100 R.I. 123, 132-33; 211 A.2d 648, 653-54 (1965). It is well-established that the Board had the power to limit its grant of a special exception to a definite period of time. Guenther v. Zoning Boardof Review of the City of Warwick, 85 R.I. 37, 40, 125 A.2d 214
(1956); Woodbury v. Zoning Board of Review of the City ofWarwick, 78 R.I. 319, 322, 82 A.2d 164 (1951). Since the Board could have limited the special exception to a two-year period without conditions, it surely has the power to apply conditions to the exception during that two-year period. In their brief the applicants concede that at the end of the two-year monitoring period they will be required to apply for approval of a continuation of the special exception. Brief of DefendantsRobert C. Pratt, Domenic R. DiLuglio, Richard N. Pratt andNeil Smith, p. 16. The defendants may or may not be correct thatAudette v. Coletti, 539 A.2d 520 (R.I. 1988) will then apply.
Since the imposition of these conditions burdens only the applicants, who consent to them, since they are plainly in the public interest, and since they cannot, of themselves, harm any interest of the plaintiffs, they should not be invalidated on appeal at the behest of the plaintiffs, even if they are not specifically authorized. The Board could, after all, have authorized a two-year trial period, without inspection and reporting, for the purpose of learning whether or not the interests protected by Section 510 of the ordinance were detrimentally affected.
The plaintiffs may also be technically correct in pointing out that the Board has no express power to compel the Conservation Commission or the Building Inspector to do anything. Section 308(E) of the zoning ordinance provides that the board shall request an advisory opinion from the Conservation Commission before it grants a special exception. The Board cannotorder the Commission to render an opinion. Nevertheless, the plaintiffs do not suggest that the Commission or the Building Inspector will refuse to make the inspections, and to render and file the reports referred to in the condition, even if the Board cannot compel them. Taking the record of this proceeding as a whole this Court can find that the plaintiffs and the defendants all share the Commission's goals of preserving and improving the natural resources of the town including Seaweed Cove. Once again, since this feature of these conditions is a burden on the applicants, for the benefit of the public generally, and cannot harm any interest of the plaintiffs, they ought not be invalidated.
The plaintiffs also argue that the incorporation of an exhibit by reference in one of the other conditions is not sufficiently explicit or definite. The Court has carefully reviewed Applicant's Exhibit 15 which consists of recommendations from consultants at the University of Rhode Island as to improvements to the proposed system. The applicants are committed to accept and apply these recommendations. They are definite and explicit. Fitzgerald v. Board of Review of the City of Newport,99 R.I. 221, 206 A.2d 635 (1965) simply doesn't apply to these recommendations.
II
The plaintiffs contend that the Board failed to consider relevant evidence on material issues. They point to the testimony of Mr. Robert Doane, a professional engineer from the State of Connecticut, who had designed and installed two commercial sewage disposal systems involving recirculating sand filters in the State of Connecticut. He testified that these filters required extensive maintenance and were subject to overflowing when the sand became clogged with algae or suspended solid waste, or when the water in the filter froze. He further testified and demonstrated that the sand and the effluent gave off an unpleasant odor. Because of the regular extensive maintenance required by this type of filter, he would not recommend it as part of a residential system.
Also, the Conservation Commission in its report, as requested under Section 308(E) of the ordinance, recommended against approval of the special exception. They described the system as innovative and experimental. It was their opinion that the burden of monitoring and testing the proposed system should not be placed on a private citizen, but should be undertaken by an institution or governmental agency. They also opined that "effective contingencies are not in place should this prototype system fail to function."
The applicants presented testimony from Mr. Raymond W. Schwab, a qualified Rhode Island professional, who had never previously designed or installed a system involving a recirculating sand filter or a denitrification chamber, and so has never had experience, as did Mr. Doane, with a malfunction of any of the components. He did testify that in the event of any failure of the filter or the denitrification chamber the system would continue to operate as a standard ISDS. He also testified that any accumulation of algae in the filter would be prevented by regular raking. Any concern about overflow, which he did not expect, could be met by installation of an overflow pipe returning any effluent to the standard ISDS elements. He also specifically contradicted Mr. Doane's opinion that there would be any odor emanating from the system.
So far from failing to consider the advice of the Conservation Commission, the Board recognized and accepted the Commission's concerns about the experimental nature of the methanol denitrification chamber with an associated partially above-ground recirculating sand filter and the requirement of intensive maintenance. The Commission's ultimate advice is substantially the same as that of Mr. Scott Nixon, the expert in marine biology, that there be no further residential development on the shores of the salt ponds in South Kingstown. Transcript,
pp. 229-30.
Development of human habitat in ecologically sensitive zones imposes an environmental cost on the other non-human natural resources of the zones. Annicelli v. Town of South Kingstown,463 A.2d 133 (R.I. 1983) makes abundantly clear that the preservation of those non-human portions of the environment in the public interest has an economic cost as well. The Town of South Kingstown by Section 308 of its zoning ordinance has in effect charged its zoning board of review to balance these costs in certain sensitive areas of the Town through the mechanism of a special exception to a regulatory prohibition against the sewage disposal systems necessary for human habitation.
The Board chose to deal with the Commission's concerns by conditioning its grant on a two-year trial period, acceptable to the applicants, subject to inspection and report by the Commission itself.
The plaintiffs are correct that the Board did not expressly address one of the issues, as to which Mr. Doane's testimony was contradicted by Mr. Schwab. Even though the Board recognized and accepted Mr. Doane's evidence regarding the intensive maintenance the system will require, and the risk of its failure, and addressed those concerns through the two-year trial period and the condition that the applicants incorporate all of the design requirements of the University of Rhode Island specialists set out in Exhibit 15, it did not discuss or decide the odor issue. That failure displays a marked insensitivity to a legitimate neighborhood concern. After all, the applicants' proposed system will bring septic tank effluent, which would normally be well-underground in a standard system, to the surface, exposed to the ambient atmosphere, with any associated odor free to waft its way through the surrounding air to offend the olfactory peace of the community.
The Board did, nevertheless find as a fact from the conflicting evidence:
 "7. If the proposed system fails due to a malfunction, the pond will not be in danger of direct septic run-off because a conventional ISDS is part of the proposed system."
It concluded that ". . . the location of the proposed system. . . will not permanently or substantially harm the appropriate use of the surrounding property." The Board was properly focusing these findings on the impact to the pond from a failure of the system to reduce the nitrogen content of the waste effluent. It did not expressly pass on the risk of odor to the atmosphere in the neighborhood from such a failure. All things considered, however, since the risks of failure due to malfunction are the same in both cases and since the same proposed preventive and remedial measures apply, it is implicit that the Board must have concluded that the neighborhood, like the pond, would not be in danger of direct septic run-off or an odor nuisance, because of the ready availability of a standard ISDS. Also, as the plaintiffs argue in another context the approval or disapproval of a sewage disposal system, standard or modified, is not within the Board's jurisdiction. Rather, it is within the specific authority of the State Department of Environmental Management. The proper concern of the Board is with the location of the sewage disposal system, not its functional features. Accordingly, this matter should not be remanded to the Board for clarification as was the case in Our Lady of Mercy v. Greenwich, Rhode Island v. ZoningBoard of Review of the Town of East Greenwich, 102 R.I. 269, 274229 A.2d 854, 857 (1967).
III
The plaintiffs assert that they were unfairly prejudiced by the Board's consideration of the testimony of Edward A. Caswell, as a "real estate expert", presumably in the field of appraisal of the value of real property in the Town of South Kingstown. He attempted to show that the impairment of the water view from the residence of two of the plaintiffs by the erection of the dwelling house proposed by the applicants would diminish the value of those plaintiffs' real property by $900 to $1080. Because an opinion of value by an expert appraiser must have some foundation other than "experience", Nasco, Inc. v. Director ofPublic Works, 116 R.I. 712, 721, 360 A.2d 871, 876 (1976), even the most liberal exercise of discretion under Rule 705 of the Rhode Island Rules of Evidence would not permit this opinion to be received in evidence at a Superior Court trial with the lack of foundation shown at this hearing. Mr. Caswell's testimony on this point was received with great skepticism, if not downright disbelief, by the chairman (Transcript, p. 165) and with some disdain for the witness' knowledge of geometry and arithmetic by another member (Transcript, pp. 166-67, 170-72). The Board obviously gave no consideration whatever to this aspect of the witness' testimony.
Much more important was the witness' testimony that the development of this lot in this neighborhood for a single-family residential use would be consistent with the other established uses in the neighborhood. (Transcript, pp. 173, 201). This conclusion is supported by other evidence such as the tax assessor's plat map, the photographs of other dwellings in the neighborhood as well as the R-20 zoning, itself. The aerial photograph (Applicant's Exhibit 6) makes clear that open space on the peninsula is relatively scarce, and according to market theory should be relatively valuable.
Someone must pay the cost of preserving open space on the peninsula, either the current owners of unoccupied land, the neighbors, who have already developed their property, or the town taxpayers. Valid regulation which prohibits an otherwise lawful use of land imposes some portion of that cost on the landowner. Regulation which deprives the landowner of all economic benefit of ownership imposes that cost on a portion of the tax-paying public. No regulation means that the market will auction that value to the ones to whom it has the greatest value, the neighbors or the landowners. The Board chose to put part of that cost on the land-owners, and part on the neighborhood, and none on the tax-payers generally.
Mr. Caswell also testified over forceful objection that in his opinion, if the development of this one house with its septic system were in fact to pollute and destroy potter pond, there would be no adverse economic impact upon properties in that area. He based that opinion on a "study" he claimed he had done on ten areas of severe pollution on the Great Lakes. His "study" consisted of determining from articles in popular magazines what were the ten worst areas for toxicity in the United States and Canada bordering on the Great Lakes. The witness claimed no personal knowledge of the extent of the impact of pollution in the Great Lakes on land values in the ten "hot spots." While the chairman allowed the evidence, his welcome was considerably less than warm. (Transcript, p. 183). The witness then attempted to report the results of a "survey" he had made of real estate brokers in the area of the "hot spots," all of whom reported that real property values had appreciated. As one member pointed out, the evidence was worthless for determining what differential impact, if any, aquatic pollution had on land values, (Transcript, 191), which intuition would seem to suggest would be negative. It is not clear what relevance an increase or decrease in the value of property in the surrounding area has to substantial and permanent injury to the appropriate use of property in the surrounding area or district, which is the criterion to be considered under Section 510(B) of the ordinance. There is an abundance of evidence which supports the Board's conclusion that the granting of the special exception will not so injure the appropriate use of property in the area.
The Board disclaims any reliance on the palpably inadmissible testimony of Mr. Caswell. Brief of Defendant South KingstownZoning Board of Review, p. 19. While the Board may have been wasting hearing time, it did not so far venture into fundamental unfairness so as to render its decision arbitrary, capricious or characterized by any abuse of discretion.
IV
The plaintiffs argue that the factual conclusions of the Board are not supported by reliable, probative and substantial evidence considering the record as a whole. All parties agree that the public health and welfare interest implicated by this special exception is the over-fertilization of vegetation in Potter Pond from nitrogen compounds flowing into the pond from human sewage. Section 308B of the ordinance is in part an effort to control the damage to that interest by regulating the location of sewage disposal components on the border of ponds like Potter Pond. Since shoreline development on Potter Pond cannot be economically prohibited, the Town is trying to control that development to minimize its impact.
The Board found that the denitrification system proposed by the system would reduce the amount of nitrogen which would otherwise be discharged into the pond by 70% to 80%, if the system operated as designed. That finding is specifically supported in the evidence. (Transcript, p. 110; Applicant's Exhibit 14, Table 2; Applicant's Exhibit 15, p. 2). There was a difference of opinion as to whether the system would operate as a practical matter, as efficiently as predicted because of the risk of malfunction and the maintenance requirements.
The experts agreed that there would be no measurable impact on the pond from the proposed septic system. (Transcript, p. 118; p. 228). The plaintiffs' expert wants to stop all further development on the shore of the pond. (Transcript, p. 229). He was not asked who should pay the cost of that prohibition, but he did opine that, if any system is to be installed at all, it should be of this type. (Transcript, p. 241). Given that testimony from the plaintiffs' expert, the Board had virtually no economically viable alternative but to approve the special exception. Fortunately, it was able to gain the applicants' accession to the conditions which it could well not have properly imposed. The applicants are prepared to go beyond the state of the art to minimize damage to the pond. They are willing, at their own expense and risk, to use an experimental system. They should be commended, not decried.
Considering all the alternatives open to the Board on the evidence before it, so far from being arbitrary the Board's decision was preeminently reasonable. It could have barred all further residential development of the lot as the surest way to preserve the status quo in the pond and the neighborhood. It would then risk compelling the taxpayers to buy this lot, and probably all the rest of the undeveloped land within 150 feet of the shore of the pond. The plaintiffs' evidence of prior use of the land as a small boat storage, launching and landing area apparently did not satisfactorily address these concerns. It could have granted the special exception unconditionally based on portions of the testimony of both experts. Neither of them could specify a "safe" level of nitrogen enrichment of the pond. (Transcript, pp. 127-28; 247). The Board should not be expected to regulate in the absence of standards based on some scientific data. It would then have lost all control over any incremental pollution to the pond. Finally, the Board could have accepted the recommendation of the applicant's expert to approve the special exception with conditions. (Transcript, pp. 137-38). This Court will not fault the Board's choice among difficult alternatives. Where more than a scintilla of evidence supports the decision of a zoning board of review, Courts will not reverse that decision.Apostolou v. Genovesi, 120 R.I. 501, 388 A.2d 821 (1978).
Accordingly, for all the foregoing reasons, the decision of the Board will be affirmed. The defendants will prepare a form of judgment for entry on notice to the plaintiffs.