DECISION
Before this Court for decision are appeals by PREFCO II Limited Partnership ("CapLease") from two decisions of the Johnston Zoning Board of Review sitting as the Board of Appeal ("Board of Appeal"). By order dated July 10, 2008, this Court remanded the matter to the Johnston Planning Board ("Planning Board") for an evidentiary hearing limited to traffic and drainage issues. The Planning Board was ordered to take into consideration all of the evidence presented at the remand hearing and all prior hearings. (Order]f 1, July 10, 2008.) Furthermore, the Planning Board was ordered to transmit its decision directly to this Court for a decision on the merits. Id.]} 3. On September 30, 2008, the Planning Board issued its written decision ("Decision") reaffirming its approval of the master and preliminary plans of Factory Mutual Insurance Company ("FM Global"). CapLease now asks this Court to modify the Decision by *Page 2 
imposing certain conditions upon the Planning Board's master and preliminary plan approval. Jurisdiction is pursuant to G.L. 1956 § 45-23-71.
 I Facts and Travel A Pre-September 30, 2008
FM Global currently leases from CapLease a building located in the Town of Johnston ("Town") for use as its corporate and worldwide headquarters. In the Fall of 2007, FM Global announced its plan to construct a $60 million, 360,000-square-foot building for its world headquarters on land it owns in the Town in close proximity to the current headquarters. Before proceeding with its plan, FM Global needed,inter alia, Major Land Development approval from the Planning Board.See section 45-23-39.
On January 10, 2008, FM Global filed an application with the Planning Board for master plan approval. See section 45-23-40. On January 17, 2008, the Planning Board issued a public notice indicating that an informational meeting would be held on February 5, 2008 regarding FM Global's master plan application. The notice stated that plans and accompanying documents would be available for public review between certain hours. At a hearing before this Court, a representative of CapLease testified that he had made numerous requests commencing as early as January 17, 2008 to review the plans and documents, but that Town officials from the Planning Office had repeatedly denied his requests. (Hr'g Tr. 63-73, May 27, 2008.) There also was testimony that the Town required CapLease to submit a written request to see FM Global's application materials. (Hr'g Tr. 64-78, 123-28, May 23, 2008.) CapLease complains that it received a copy of FM Global's application only hours before the February 5, 2008 informational meeting, *Page 3 
despite its numerous earlier requests. Notwithstanding CapLease's request to postpone the informational hearing, the Planning Board proceeded as planned, ultimately approving FM Global's master plan application.
FM Global applied to the Planning Board for preliminary plan approval on February 12, 2008. See section 45-23-41. As with the master plan, CapLease asserts that it did not receive timely access to the application materials when it received such materials one day before the March 4, 2008 public hearing. At the March 4, 2008 hearing, CapLease was denied a continuance; and the Planning Board approved FM Global's preliminary plan application.
After the Planning Board had orally approved both plans, but before written decisions were recorded, FM Global applied on March 12, 2008 to the Town's building official for signage and foundation permits. In a letter dated March 24, 2008, counsel for FM Global wrote the Town a letter indicating that FM Global would indemnify the Town if the signage and foundation permits were found to have been illegally issued. The building official issued the foundation and signage permits on March 26 and 28, 2008, respectively. One minute after issuing the signage permit, the Planning Board recorded and posted its written decisions approving FM Global's master and preliminary plans.
On April 4, 2008, CapLease appealed the Planning Board's March 28, 2008 decision approving the master plan to the Board of Appeal. With its foundation permit in hand, FM Global began constructing the foundation. On April 11, 2008, CapLease demanded that the Town issue a Cease Work Order with respect to the foundation arguing that its appeal imposed an automatic stay. See section 45-23-68. To determine whether a Cease Work Order was appropriate, the building official inspected the *Page 4 
construction site. The building official opined that ordering all construction to cease would create public safety concerns and adversely affect the structural integrity of the building. On April 15, 2008, CapLease appealed the actions of the building official in issuing the foundation and signage permits to the Board of Appeal. On April 16, 2008, CapLease also appealed the Planning Board's decision dated March 28, 2008 approving FM Global's preliminary plan approval to the Board of Appeal.
On April 21, 2008, the Director of the Department of Public Works for the Town ("Public Works Director") issued a Cease and Desist Order prohibiting FM Global from performing any construction other than completing the foundation. On April 30, 2008, CapLease filed a four-count verified complaint in this Court and moved for a Temporary Restraining Order and a Preliminary Injunction. After two days of hearings, this Court restrained the Town from issuing any further permits to FM Global and adopted the Public Works Director's April 21, 2008 Cease and Desist Order as a Temporary Restraining Order with some minor variation.
On May 20, 2008, the Board of Appeal recorded and posted four decisions as follows: (a) affirming the Planning Board's master plan approval; (b) affirming the Planning Board's preliminary plan approval; (c) affirming the building official's action of issuing the signage permit; and (d) affirming the building official's action of issuing the foundation permit. CapLease timely appealed to this Court all four decisions of the Board of Appeal by amending its complaint to include Count XIII.
In addition to amending its complaint, CapLease moved for a Stay of Proceedings. See section 45-23-71(a) ("[t]he appeal does not stay proceedings upon the decision appealed from, but the court may, in its discretion, grant a stay on appropriate *Page 5 
terms and make any other orders that it deems necessary for an equitable disposition of the appeal."). After several days of hearings, in a bench decision, this Court denied CapLease's motion for a Stay of Proceedings, and vacated and dissolved the existing Temporary Restraining Order thus allowing FM Global to continue construction at its own risk.[1] On June 11, 2008, an Order entered that severed Counts I through XII from the First Amended Verified Complaint, leaving only Count XIII, the four appeals from the Board of Appeal.[2]
On July 10, 2008, this Court entered an Order remanding the matter to the Planning Board. Specifically, the Order stated:
 [t]his matter is hereby remanded to the Johnston Planning Board for the purposes of conducting a public evidentiary hearing limited to traffic and drainage issues and for the entry of a decision by the Planning Board in light of all of evidence [sic] presented at such hearing and all prior hearings containing detailed findings of fact related to its decision on the Factory Mutual application for its major land development project and Master Plan and Preliminary Plan approval. (Order If 1, July 10, 2008.)
The Order further required the Planning Board to transmit its findings directly back to this Court for decision. Id.]} 3.
On August 5 and September 2, 2008, the Planning Board held the ordered evidentiary hearings. At the August 5, 2008 hearing, FM Global first called Mr. Robert Clinton, a traffic engineer employed by Vanasse Hangen Brustlin, to testify as a traffic expert. (Planning Bd. Hr'g Tr. 10, Aug. 5, 2008.) Mr. Clinton was the transportation project manager for the FM Global project, and testified regarding how the project's *Page 6 
design would mitigate increased traffic flow. Id at 17-18. Mr. Clinton testified that the design included: (1) adding left-turn lanes; (2) lengthening existing right-turn lanes; (3) interconnected traffic signal system; and (4) other road improvements. Id at 22.
FM Global next called Mr. Lance Hill, a civil engineer employed by Vanasse Hangen Brustlin, to testify regarding drainage issues. (Planning Bd. Hr'g Tr. 75, Aug. 5, 2008.) With respect to the FM Global project design, Mr. Hill worked as the project manager for the land development group. He testified that the project team sought Leadership in Environmental and Energy Design (LEED) certification. Id at 78. He further testified that "[t]his design mitigates all of the proposed stormwater impacts and the drainage impacts to the site through a number of detention slash retention facilities." Id at 79.
CapLease called Mr. Robert D. Vanasse, a transportation engineer employed by Vanasse and Associates, to testify as a traffic expert. Mr. Vanasse essentially agreed with FM Global's expert regarding the physical road improvements that needed to be made, but testified that these road improvements "should be completed before FM Global takes occupancy of its property." Id at 140.
Finally, CapLease called Mr. David Albrecht, a licensed professional engineer at Tetra Tech Rizzo, to testify as an expert on drainage issues. Mr. Albrecht testified that he did not do an independent study of the drainage issues, but rather was reviewing the plan of FM Global's expert, Mr. Hill. Mr. Albrecht's main criticism of Mr. Hill's analysis was that it did not account for back-to-back one-hundred year storms, which, according to Mr. Albrecht, could cause water to flow uphill and flood CapLease's property. Id at 173. *Page 7 
On September 2, 2008, the Planning Board voted to accept a report from the Director of Public Works dated August 28, 2008. The Planning Board voted to reaffirm its prior approval. (Planning Bd. Hr'g 5:17, Sept. 2, 2008.) On September 30, 2008, the Planning Board recorded and posted its written Decision reaffirming the previous decision to approve. In accordance with the mandate of this Court's July 10, 2008 order, the Planning Board transmitted its findings back to this Court.
 B Post-September 30, 2008
On October 9, 2008, pursuant to G.L. 1956 § 23-27.3-127.2.5(f), CapLease appealed to the State Building Code Standards Committee ("Committee")[3] the decisions of the Board of Appeal that affirmed the building official's issuance of the foundation and signage permits. The Committee unanimously denied the appeals, and its written decision to that effect was appealed to the District Court pursuant to § 23-27.3-127.1.4(f).[4] On October 16, 2008, the Rhode Island Department of Transportation ("RIDOT"), the Town, and 195 Associates, LLC executed an agreement by which RIDOT would bear the cost of making the road improvements. Thereafter, counsel for CapLease, the Town, and FM Global filed memoranda to assist this Court with its determination of the matter at bar. *Page 8 
 II Standard of Review
In reviewing the decision of a board of appeal, the superior court is governed by § 45-23-71, which provides in pertinent part that:
 (c) The court shall not substitute its judgment for that of the planning board as to the weight of the evidence on questions of fact. The court may affirm the decision of the board of appeal or remand the case for further proceedings, or may reverse or modify the decision if substantial rights of the appellant have been prejudiced because of findings, inferences, conclusions or decisions which are:
 (1) In violation of constitutional, statutory, ordinance or planning board regulations provisions;
 (2) In excess of the authority granted to the planning board by statute or ordinance;
 (3) Made upon unlawful procedure;
 (4) Affected by other error of law;
 (5) Clearly erroneous in view of the reliable, probative, and substantial evidence of the whole record; or
 (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.
"Pursuant to § 45-23-71, judicial review of board decisions is not denovo." Monroe v. Town of E. Greenwich, 733 A.2d 703, 705 (R.I. 1999) (citing Kirby v. Planning Bd. of Review, 634 A.2d 285, 290 (R.I. 1993)). When reviewing a board of appeal decision, this Court "is limited to a search of the record to determine if there is any competent evidence upon which the agency's decision rests." E. Grossman Sons, Inc. v.Rocha, 118 R.I. 276, 286, 373 A.2d 496, 501 (1977) (citing Prete v.Parshley, 206 A.2d 521, 523 (1965)). Competent evidence is "any evidence that is not incompetent by reason of being devoid of probative force as to the pertinent issues." Zimarino v. Zoning *Page 9 Bd. of Review, 95 R.I. 383, 386, 187 A.2d 259, 261 (1963). This Court must uphold a decision of a board of appeal board if it is supported by competent evidence. Bellevue Shopping Ctr. Ass'n v. Chase, 574 A.2d 760,764 (R.I. 1990). "The Superior Court does not consider the credibility of witnesses, weigh the evidence, or make its own findings of fact." Id,; Lett v. Caromile, 510 A.2d 958, 960 (R.I. 1986).
 III Conditions
CapLease asks this Court to modify the Decision by conditioning approval of the master and preliminary plans on "performance and completion of the remedial traffic and drainage measures" proposed by FM Global's experts. (See PL's Brief in Supp. of Reversal[5] and Modification of Planning Bd. Decision 3.) FM Global asserts that this Court must not substitute its own judgment for that of the Planning Board by imposing conditions where the Planning Board imposed none. FM Global also asserts that there was competent evidence in the record to support the Decision not to condition approval upon completion of remedial traffic and drainage measures.
Under Rhode Island law, a planning board is not required to impose conditions on master or preliminary plan approval merely because an objector proposes such conditions. See Indus. Dev. Found, of GreaterWoonsocket v. Zoning Bd. of Review, 100 R.I. 123, 132, 211 A.2d 648, 653
(1965) (finding that zoning board of review was not required to impose conditions that remonstrant proposed upon grant of special exception where competent evidence showed conditions unnecessary); see also, 5 Arden H. *Page 10 
Rathkopf, The Law of Zoning Planning, § 87:11 (2008) ("[e]ven though planning boards may have the authority to impose certain conditions, they do not have to impose them."). This Court must determine if there was competent evidence in the record to support the Planning Board's Decision not to impose the conditions that CapLease requests.See E. Grossman, 118 R.I. at 286, 373 A.2d at 501.
With respect to drainage, CapLease asks this Court to condition plan approval on the completion and maintenance of the various facilities included in the proposed drainage design. Such facilities include detention basins, biofiltration swales, rain gardens, oil-water separators, and deep-sump hooded catch basins. FM Global asserts that requiring the completion of such facilities is unnecessary because many of the improvements are already completed, and there is no reason to believe that the rest will not be completed. Furthermore, in a letter from the Director of Public Works to the Planning Board it was noted that FM Global would need to complete the drainage facilities prior to receiving a certificate of occupancy from the Town. (Planning Bd. Decision Ex. B, Sept. 30, 2008.) This Court expects that the appropriate Town official would deny FM Global a certificate of occupancy unless the drainage measures are completed as laid out in the plan. Accordingly, this Court finds that there was competent evidence in the record to support the Planning Board's Decision not to condition completion of the drainage improvements prior to plan approval.
Similarly, with respect to traffic, CapLease asks this Court to condition plan approval on the completion of all of the various traffic improvements. These traffic improvements include improved signal coordination, the widening of Atwood Avenue, and a redesign of various intersections. The Planning Board granted approval without *Page 11 
conditions because it found that FM Global presented "convincing testimony that the full-build out roads [sic] improvements are not necessary prior to introduction of traffic from Stonehill Marketplace." Id Essentially, the Planning Board found it unnecessary for FM Global to complete all of the road improvements prior to plan approval because the full extent of traffic congestion would not arise unless and until Stonehill Marketplace were completed. (Planning Bd. Hr'g 34:2-4, Aug. 5, 2008.) The Planning Board also relied on the fact that the Town, 195 Associates, LLC, the Rhode Island Department of Transportation ("RIDOT"), Stonehill Marketplace, and FM Global entered into a contract whereby the RIDOT agreed to fund and construct "the Route 6 project." Accordingly, this Court finds that there is competent evidence in the record upon which the Planning Board relied to support unconditional plan approval.
 IV Remand
Although in this case this Court will not impose conditions on master and/or preliminary plan approval, it does not condone the reprehensible actions of the Town officials at the Planning Office. This Court finds credible the testimony, elicited at the hearings before it, that officials at the Town Planning Office repeatedly denied CapLease's requests to review FM Global's applications for master and preliminary plan approval. (See Hr'g Tr. 63-73, May 27, 2008; Hr'g Tr. 64-78, 123-28, May 23, 2008.) Due to the delay in being permitted to review the application, CapLease suffered a disadvantage during the original hearings before the Planning Board. As appropriately noted in CapLease's brief, "[fjhis is not the first time that the Town of Johnston has engaged in behavior of the type presented in this case." (PL's Br. in Supp. of Reversal and Modification of Planning Bd. Decision 19.) In its brief, CapLease proceeded to cite *Page 12 
various Rhode Island cases in which the Town of Johnston has been chided for its failure to follow rudimentary requirements of law.[6]
However, notwithstanding the opprobrious actions of the Town officials, this Court cured any legal prejudice that CapLease suffered by remanding the matter to the Planning Board for public hearing. At the remand hearing, CapLease had ample opportunity to put on its own expert witnesses, and thus, had a full and fair opportunity to be heard. There is not a scintilla of evidence to suggest that the remanded hearing simply resulted in a rubberstamping of the earlier decisions. Therefore, this Court finds that substantial legal rights of CapLease have not been prejudiced by any unlawful procedure, because any such prejudice was remedied by the remand. The Court notes, however, that CapLease was put to additional expense by the actions of town officials as aforesaid. CapLease may apply to this Court for fees and costs which, but for such actions, would not have been incurred in connection with this action.
 V Conclusion
After review of the entire record, this Court finds that the decisions of the Board of Appeal as supplemented by the decision of the Planning Board after remand are not affected by error of law nor are they in violation of ordinance provisions. Substantial rights of the Appellant have not been prejudiced. Accordingly, this Court affirms the decisions of the Board of Appeal with respect to master and preliminary plan approval. Order to enter.
[1] An Order to this effect entered June 16, 2008.
[2] Per the June 11, 2008 Order, a new civil action number, PB-2008-4030, was assigned to Counts I-XII. Notwithstanding the severance of the first twelve Counts, CapLease persisted in arguing the severed Counts in its most recent brief for PB-2008-3219. As mentioned previously, because CapLease is only asking this Court to modify the Planning Board's Decision, this Court will not reach the issues raised in Counts I-XII.
[3] The Committee, created pursuant to § 23-27.3-100.1.3, may act as a board of appeals to hear appeals from the decisions of local boards of appeal. See section 23-27.3-127.1(a) ("[tjhe committee shall . . . have the power to sit as a state board of appeals. . . .").
[4] Because CapLease chose to appeal the issuance of the foundation and signage permits in another forum, this Court will not entertain such appeals. Accordingly, this decision deals only with (1) the master plan appeal; and (2) the preliminary plan appeal.
[5] Although it would appear that CapLease were asking for reversal, CapLease is only asking this Court to modify the Decision by imposing conditions. (See PL's Br. in Supp. of Reversal and Modification of Planning Bd. Decision 3 (" . . . the only fair remedy is a reversal of the approval as now embodied in the Decision. As that would correspondingly require removal of the Project as currently constructed, CapLease is not seeking such a drastic remedy [i.e., reversal].").)
[6] See. e.g.. Marsocci v. Pilozzi. No. PC-03-2254, 2006 WL 1530259, at *6 (R.I.Super.Ct. June 2, 2006) (citing Picon Corp. v. Town ofJohnston Zoning Bd. of Review. No. PC-04-3051, 2005 WL 1163986, at *5 (R.I.Super.Ct. May 16, 2005); Mount Dev. Group, LLC v. Zoning Bd. ofReview, No. PC-02-2234, 2003 WL 1227231, at *6 (R.I.Super.Ct. Mar. 11, 2003); Verdone v. Richard, No. PC-00-1609, 2003 WL 1389114, *2-3 (R.I.Super.Ct. Feb. 20, 2003); V.J. Berarducci Sons, Inc. v. Zoning Bd. of Review, No. PC-02-0752, 2002 WL 31324143, *2-3 (R.I.Super.Ct. Aug. 21, 2002)). *Page 1